## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

| | |
|---|---|
| KRISTOFFER JON HIND, an individual; JASON THOMAS WAITON, an individual; CHRISTOPHER CAMPBELL, an individual; PAUL DOUGLAS STOEPPELWERTH, an individual; LUCAS LONGMIRE, an individual; THOMAS BLAIR PHILLIPS, an individual; TYLER JENKINS, an individual; JORDEN DAVID NEIL MALCOLM, an individual; ROBERT TAYLOR YATES, an individual; and RAFAEL REYES SALMERON, an individual, | JURY TRIAL DEMANDED |
| Plaintiffs, | |
| v. | |
| FXWINNING LIMITED, a Hong Kong limited company; CFT SOLUTIONS, LLC, a Delaware limited liability company; RENAN DE ROCHA GOMES BASTOS, an individual; RAFAEL BRITO CUTIE, an individual; ARTHUR PERCY, an individual; ROMAN CARDENAS, an individual; and DAVID MERINO, an individual, | |
| Defendants. | |

## COMPLAINT

Plaintiffs Kristoffer Jon Hind, Jason Thomas Waiton, Christopher Campbell, Paul Douglas Stoeppelwerth, Lucas Longmire, Thomas Blair Phillips, Tyler Jenkins, Jorden David Neil Malcolm, Robert Taylor Yates, and Rafael Reyes Salmeron (collectively "Plaintiffs"), by and through their undersigned attorneys, commence this action against FxWinning Limited ("FxWinning"), CFT Solutions, LLC ("CFT," and together with FxWinning, the "Companies"), Renan de Rocha Gomes Bastos, Rafael Brito Cutie, Arthur Percy, Roman Cardenas, and David Merino (individually together the "Individual Defendants," and together with the Companies the "Defendants"), and allege as follows:

## INTRODUCTION

1.      This action arises from Defendants' numerous fraudulent actions and misrepresentations regarding the Companies' foreign exchange (forex) trading platform and services, for which the Companies and Individual Defendants have converted tens of millions of dollars belonging to Plaintiffs for Defendants' benefit.

2.      Defendants represented to Plaintiffs that Defendant Merino had invented an algorithm that would allow clients such as Plaintiffs to receive high returns on forex trading, which would be collectively run by CFT and its broker, FxWinning.  Defendants pitched the Companies as providing not just high returns, however, but they also guaranteed the security of Plaintiffs' funds – investments which would, in the end, total tens of millions of dollars.

3.      But Defendants' representations turned out to be false.  While Defendants initially permitted several withdrawals by Plaintiffs from their accounts through December 2022 – to lull Plaintiffs into a false sense of security and convince Plaintiffs to deposit additional funds – Defendants discontinued all withdrawals in early 2023 under the guise of instituting new security-guided procedures to comply with requirements of its liquidity provider, i.e., new Know Your Customer (KYC) and Anti-Money Laundering (AML) procedures.

4.      Defendants' purported justifications were farcical – and indeed fraudulent – because, even after purportedly establishing the KYC and AML procedures and expressly informing Plaintiffs in May and June 2023 that their KYC and AML updates were "successfully completed" and that Plaintiffs would have their funds within fifteen working days, Defendants have still failed to release a single dollar.

5.      To this day, Defendants have wrongfully held – and continue to withhold – more than $26,000,000.00 belonging to Plaintiffs.

6.      For these and the following reasons, Plaintiffs bring this action to recover their wrongfully withheld funds and seek damages against Defendants as a result of Defendants' fraudulent and improper actions.

## THE PARTIES

7.      Plaintiff Kristoffer Jon Hind is an individual over the age of eighteen who resides in San Diego County, California.

8.      Plaintiff Jason Thomas Waiton is an individual over the age of eighteen who resides in San Diego County, California.

9.      Plaintiff Christopher Campbell is an individual over the age of eighteen who resides in Williamson County, Tennessee.

10.      Plaintiff Paul Douglas Stoeppelwerth is an individual over the age of eighteen who resides in Miami-Dade County, Florida.

11.      Plaintiff Lucas Longmire is an individual over the age of eighteen who resides in Miami-Dade County, Florida.

12.      Plaintiff Thomas Blair Phillips is an individual over the age of eighteen who resides in Okaloosa County, Florida.

13.      Plaintiff Tyler Jenkins is an individual over the age of eighteen who resides in Okaloosa County, Florida.

14.      Plaintiff Jorden David Neil Malcolm is an individual over the age of eighteen who resides in British Columbia, Canada.

15.      Plaintiff Robert Taylor Yates is an individual over the age of eighteen who resides in Utah County, Utah.

16.      Plaintiff Rafael Reyes Salmeron is an individual over the age of eighteen who resides in Collier County, Florida.

17.     Upon information and belief, Defendant CFT Solutions, LLC is a Delaware limited liability company with its principal place of business in Miami-Dade County, Florida.

18.     Upon information and belief, Defendant FxWinning Limited is a Hong Kong limited company, which is registered under number 2930110.  Upon information and belief, FxWinning operates without a principal place of business.  FxWinning's website lists locations in Hong Kong and Saint Vincent and the Grenadines but provides a contact number with a Cyprus country code.  Upon information and belief, FxWinning maintains a workspace in Cyprus, a workspace in Dubai where its Chief Executive Officer (Rafael Brito Cutie) operates the company, and a workspace in Miami-Dade County, Florida, where FxWinning's vice president (Roman Cardenas) assists with operating the company.

19.     Upon information and belief, Defendant Renan de Rocha Gomes Bastos (de Rocha) is an individual over the age of eighteen who resides in Miami-Dade County, Florida.  Upon information and belief, de Rocha is a founder of CFT and its Chief Executive Officer (CEO).

20.     Upon information and belief, Rafael Brito Cutie (Brito) is an individual over the age of eighteen who resides partially in Miami-Dade County, Florida, partially in Dubai, partially in the United Arab Emirates, and partially in Cyprus.  Upon information and belief, Brito is a co-owner of FxWinning and its CEO.

21.     Upon information and belief, Defendant Arthur Percy is an individual over the age of eighteen who resides in Miami-Dade County, Florida.  Upon information and belief, Percy is the Chief Operating Officer (COO) of CFT.

22.     Upon information and belief, Defendant Roman Cardenas is an individual over the age of eighteen who resides in Miami-Dade County, Florida.  Upon information and belief, Cardenas is FxWinning's vice president.

23.     Upon information and belief, Defendant David Merino is an individual over the age of eighteen who resides in Las Palmas De Gran Canaria, Spain, and who has conducted business in Miami-Dade County, Florida.  Upon information and belief, Merino is a founder and owner of FxWinning.  Merino is also the founder and owner of Merino Capital Solutions, Inc. ("Merino Capital"), a Florida corporation with its principal place of business in Miami-Dade County, Florida.

## JURISDICTION AND VENUE

24.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the case arises, in part, under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the Securities Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5.  This action also arises, in part, under Section 17(a) and (b) of the Securities Act of 1933, 15 U.S.C. § 77q.

25.     This Court has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367 because such claims are so closely related to the Securities Act and Securities Exchange Act claims that they are part of the same case and controversy.

26.     Personal jurisdiction exists over Defendants because this dispute arises out of, or is related to, the Defendants' contacts with this forum, including but not limited to operating the Companies from Miami-Dade County, Florida (as both CFT Solutions and FxWinning have their principal or other places of business in the state) and directing their operations to citizens in Florida.

27.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the acts that form the basis of this action occurred in this district.

## GENERAL ALLEGATIONS

28.     Upon information and belief, CFT was established in 2019 by de Rocha.  Upon further information and belief, de Rocha hired Percy to be CFT's COO.

29.     CFT purports to offer investors a "High-Frequency Trading System" that "use[s] . . . high-power computers . . . to execute a large number of orders at extremely high speeds, detecting emerging trends in a fraction of a second," that accordingly allows "traders [to] make profits even with very small price fluctuations."[1]

30.     CFT's software allegedly trades on the foreign exchange (forex) market.

31.     According to CFT, investors gain access to its software by opening an account with FxWinning (and in pari passu, that through the FxWinning brokerage account, the investor can access CFT's software).

32.     Upon information and belief, FxWinning was established in early 2020 by Brito and Merino.  Upon information and belief, Brito and Merino hired Cardenas as FxWinning's vice president of operations in the United States.

33.     FxWinning operates at least two websites, fxwinning.net and fxwinning.pro, which are online platforms where customers can access and manage their CFT/FxWinning accounts.

34.     According to its website, FxWinning is a "brokerage firm" offering a "powerful [ ] trading platform" "exclusive . . . to retail and institutional clients around the world" that "guarantee[s] you the best spreads and trading conditions."[2]

35.     FxWinning represents that it "has purchased Client Money Insurance (CMI) on behalf of our clients and is a member of a network of responsible global financial service providers offering additional layers of security."[3]

36.     Moreover, FxWinning represents that its platform is "transparen[t]" and that FxWinning segregates all client funds from company accounts.[4]

---

[1] CFT Solutions, Common Questions Page, https://www.cftsolutions.info/perguntas-frequentes?lang=en.

[2] FxWinning Net, Home Page, https://fxwinning.net/index_en.html; and FxWinning Net, News Page, https://www.fxwinning.pro/news?lang=en.

[3] *Id.*; FxWinning Pro, Home Page, https://www.fxwinning.pro/?lang=en.

[4] *Id.*

37.     Collectively, the Companies and the Individual Defendants touted the Companies' services and platform to Plaintiffs to induce Plaintiffs to invest millions of dollars with the Companies.

38.     For example, CFT stated in March 2022 that FxWinning was a registered broker.

39.     For further example, CFT stated in March 2022 that funds were transferred directly to the Companies' liquidity provider.

40.     On April 10, 2022, CFT stated that it was "+44% positive this year 2022," compared to all other markets, which CFT contended "are all in the negative."  CFT told Plaintiffs that "2022 is going to be an amazing year."

41.     And on May 24, 2022, CFT represented to Plaintiffs that CFT and FxWinning were "ending the month with an AMAZING result" and that even in a recession "Our software will always perform better in situations of chaos and extreme volatility."

42.     Defendants also represented higher returns were available to investors that invested (either individually or as a pool) $4 million or more.

43.     As a result of Defendants' representations, including the representations on their websites, each of the Plaintiffs opened accounts with CFT and FxWinning and began depositing funds into their CFT/FxWinning trading accounts:

   a.  Kristoffer Jon Hind opened his account (account number ending in *220) on or about August 1, 2022.

   b.  Jason Thomas Waiton opened his account (account number ending in *982) on or about September 1, 2022.

   c.  Christopher Campbell opened his accounts (account numbers ending in *184 and *512) on or about March 14, 2022.

d.  Paul Douglas Stoeppelwerth opened his account (account number ending in *371) on or about June 16, 2022.

e.  Lucas Longmire opened his account (account number ending in *499) on or about February 7, 2021.

f.  Thomas Blair Phillips opened his account (account number ending in *464) on or about December 3, 2021.

g.  Tyler Jenkins opened his account (account number ending in *633) on or about February 9, 2022.

h.  Jorden David Neil Malcolm opened his account (account number ending in *240) on or about August 31, 2022.

i.  Robert Taylor Yates opened his account (account number ending in *516) on or about April 14, 2022.

j.  Rafael Reyes Salmeron opened his account (account number ending in *508) on or about January 27, 2022.

44.    Each of the Plaintiffs also signed limited power-of-attorney agreements with CFT for CFT to effectuate trading on the FxWinning accounts.

45.    Plaintiffs were not permitted to create an account and "start trading" until they certified that they agreed to FxWinning's terms and conditions, available on both the fxwinning.net and fxwinning.pro websites.

46.    Section 3.4 of the terms and conditions provides that at "all times" Plaintiffs "have the right to withdraw [the amount owed as the balance of the account]":

3.4  After the activation of the account, the Client will be able to see the amount owed as the balance of the account in MyFxWinning (the Company's online portal) at all times and will have the right to withdraw the same, upon request.

47.    The terms and conditions provided no restrictions on Plaintiffs' ability to withdraw their funds.

48.     But for CFT's and FxWinning's representations, including Defendants' guarantees of security of Plaintiffs' funds and the promise of the "best spreads" available, Plaintiffs would not have opened their CFT/FxWinning trading accounts.

49.     Even after Plaintiffs opened their accounts, Defendants pushed Plaintiffs to continuously deposit more and more money into their accounts.

50.     Defendants invited Plaintiffs to a yacht party in January 2022, with de Rocha (CFT's CEO) and Cardenas (FxWinning's VP), and discussed further investment in CFT and FxWinning and the returns that CFT and FxWinning were earning.

51.     Plaintiffs Longmire and Phillips personally attended the yacht party.

52.     Defendants also held conferences and invited Plaintiffs (among other potential investors) as their guests to a "summit" in the Bahamas in December 2022 during which Defendants celebrated the high returns that Plaintiffs were purportedly earning and pushed Plaintiffs to increase their investments.

53.     Plaintiff Campbell personally attended the Bahamas summit and heard Defendants' representations.

54.     To promote the platform and services during the summit, Defendants introduced attorneys general Matthew Whitaker (former acting United States Attorney General) and Todd Rokita (Indiana Attorney General) as CFT's latest board members and paid them to speak regarding Defendants' (particularly de Rocha's) professionalism and business judgment.

55.     Indeed, Defendants went to great lengths to hold the Companies out as legitimate despite that clearly not being the case, and through the Companies' websites and at the Companies' events, made numerous representations to encourage customers to invest with Defendants.

56.     CFT presented a KPMG audit report stating that all trades had been reviewed. Upon information and belief, the representation regarding a KPMG audit report was false because the audit report was fake.

57.     Defendants also provided Plaintiffs what was purported to be the CFT dashboard showing the success of the Companies' forex trading:



Upon information and belief, CFT's dashboard representation was false because CFT and FxWinning did not earn such high returns.

58.     CFT stated that CFT and FxWinning's trading was 71% successful and "one of the best software in the world."  Upon information and belief, CFT's (and FxWinning's) success rate was false.

59.     Following the December Bahamas summit, however, and beginning in or around January 2023, Defendants began informing Plaintiffs that their withdrawals would be delayed.  Whereas withdrawals initially took 24-48 hours, Defendants represented that due to the holidays and for other reasons, withdrawals would take several days to process.

60.     By the middle of January, Defendants informed Plaintiffs that any requested withdrawals would take up to two weeks.

61.     Defendants continued to nevertheless request that Plaintiffs deposit additional funds – despite disallowing any withdrawals.  For example, de Rocha stated on CFT's telegram channel on February 3, 2023 that CFT would soon close out new investments and that "if interested, get in now."

62.     By the end of February 2023, Defendants told Plaintiffs that no withdrawals would be made.  Defendants blamed the inability to process any withdrawals on new KYC/AML requirements that FxWinning's liquidity provider had purportedly instituted. Defendants did not provide a timeline when the KYC/AML process would be complete.

63.     By or around late March and early April 2023, Plaintiffs had submitted all requested information to comply with Defendants' purported updated KYC/AML procedures.

64.     In April 2023, FxWinning advised Plaintiffs that the time to process withdrawals would depend on the KYC/AML process.

65.     On April 16, 2023, FxWinning posted the following on its website:

The KYC process continues to evolve, and many clients have already been approved through emails.  For those who were approved and had pending withdrawals, we are happy to inform you that the withdrawals have been processed and your accounts are properly normalized. . . .

Our goal is to normalize all withdrawals as soon as possible, ensuring security and compliance with applicable regulations.  We value your trust in our platform and strive to offer the highest level of service and professionalism.

66.     By or around late May and early June 2023, FxWinning informed Plaintiffs by email that their applications/updated information were "successfully completed" and that FxWinning would process Plaintiffs' withdrawals within "15 working days":

Dear customer,

We are pleased to inform that your KC and AML process has been successfully completed.  Your account is now able to withdraw normally.

This process was necessary due to instruction from our liquidity provider to implement advanced KYC and AML procedures to all existing clients.  This ensures compliance with legal and regulatory standards to prevent money laundering, thus guaranteeing the security and stability of our platform.

Remember that in case you have any pending withdrawal you will be able to have this money in your wallet in 15 working days, once it is processed we will send you the confirmation via email.

67.     Despite representing that Plaintiffs' withdrawals would be processed within fifteen days, Defendants have yet to release any of Plaintiffs' funds.

68.     On June 12, 2023, FxWinning posted to its website that "We expect withdrawal payments to become effective immediately, having received the green light to start this process."

69.     On June 17, 2023, Plaintiff Campbell messaged Brito stating that he had "put in a withdrawal request on Monday and haven't gotten the confirmation email.  No response from support either."  Brito informed Campbell on June 20, 2023, that FxWinning would have to close the company, but nevertheless reassured Campbell that the "client portal will remain, so everyone can see all," withdrawals would happen soon, and "Nothing [is] lost as people believe."

70.     Despite FxWinning's representations that the withdrawals would be forthcoming, FxWinning posted the following on its website on June 20, 2023:

> **Important Notice**: FxWinning Limited regrets to inform you that due to unforeseen circumstances, our services will cease on **Thursday, 22.06.2023**.  Please close all open trades before **Wednesday 21.06.2023 13:00 GMT+3** to avoid possible problems.  Kindly withdraw your remaining funds promptly, and our team will assist you in the process.  Withdrawals will be available until Friday 30.06.2023.  We apologize for any inconvenience caused and appreciate your understanding during this challenging time.  (Emphasis in original.)

71.     FxWinning has, to date, failed to release any of Plaintiffs' funds or process their withdrawals, despite numerous requests to do so, and any "normalizing" or "approval" that Defendants stated would occur did not result in any withdrawals being processed.

72.     Contrary to FxWinning's representations that it would segregate accounts and provide the "highest standards of security and trust for clients funds," none of FxWinning representations (or CFT's representations about FxWinning) were true when made.

73.     Upon information and belief, whereas Defendants prevented any withdrawals by Plaintiffs, Defendants withdrew millions of dollars for their own personal benefit.

74.     Upon information and belief, the Individual Defendants received substantial commissions and profits (totaling millions of dollars) from each Plaintiff that signed up and invested with the Companies (commissions and profits which were, upon information and belief, based on the amount of money that Plaintiffs invested).

75.     At present, the total value of Plaintiffs' accounts is approximately $26,059,417.40:

    a.  Kristoffer Jon Hind has an account value of at least $444,367.59.

    b.  Jason Thomas Waiton has an account value of at least $701,392.67.

    c.  Christopher Campbell has account values of at least $10,847,597.00.

    d.  Paul Douglas Stoeppelwerth has an account value of at least $448,783.71.

    e.  Lucas Longmire has an account value of at least $9,359,107.30.

    f.  Thomas Blair Phillips has an account value of at least $1,795,595.32.

    g.  Tyler Jenkins has an account value of at least $520,533.89.

    h.  Jorden David Neil Malcolm has an account value of at least $279,266.10.

    i.  Robert Taylor Yates has an account value of at least $231,043.10.

    j.  Rafeal Reyes Salmeron has an account value of $1,431,730.68.

76.     Upon information and belief, the Defendants have known (or should have known) since the beginning of the creation of the Companies that the Companies were nothing more than a fraudulent scheme to induce potential transfers of money to CFT and FxWinning, no high rate of return would be possible, and that Plaintiffs would never receive a full withdrawal from their accounts as they were promised.

77.     Upon information and belief, Individual Defendants used their ill-gotten gains from FxWinning and CFT to purchase real property and cryptocurrency.

78.     Upon information and belief, de Rocha, through his shell entity BBRC, purchased real property at 2608 Biarritz Drive in Miami Beach, Florida in or about September 2022.

79.     Upon information and belief, Defendants have also withdrawn millions from CFT and/or FxWinning accounts and/or cryptocurrency wallets belonging to CFT and/or FxWinning, despite no other investor withdrawals being permitted.

80.     All conditions precedent to the maintenance of this action have occurred, been satisfied, or have otherwise been waived.

**COUNT I**
**(Violation of the Securities Exchange Act of 1934 and Rule 10b-5, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5 – against all Defendants)**

81.     Plaintiffs reallege and incorporate Paragraphs 1 through 80 as if fully set forth herein.

82.     This claim is brought under § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, against all Defendants.

83.     The Defendants: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon Plaintiffs in violation of § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

84.     As set forth above, Defendants, individually and in concert, directly and indirectly, represented to Plaintiffs that the investment funds were held in accounts that would be used for forex trading and investors could withdraw funds from the accounts at any time upon request.

85.     Defendants' representations were material to Plaintiffs and induced Plaintiffs to invest their funds in Defendants' schemes and artifices.

86.     Defendants' representations were made in connection with the purchase of securities.   Plaintiffs invested money in a common enterprise, the Companies, with the expectation of future profits generated by the efforts of Defendants – both individually and in concert.

87.     Defendants knew that they in fact did not intend to honor the terms of Plaintiffs' investments and that the statements that Defendants made to solicit Plaintiffs' funds were materially false and misleading.

88.     Had Plaintiffs known that Defendants' representations were false and misleading, Plaintiffs would not have deposited funds with the Companies.

89.     As a result of Defendants' wrongful conduct, as alleged herein, Plaintiffs have suffered economic damages in an amount to be established at trial.

90.     Defendants are jointly and severally liable to Plaintiffs for substantial damages that Plaintiffs have suffered in connection with their CFT and FxWinning's accounts.

**COUNT II**
**(Violation of the Securities Act of 1933, Section 17(a) and (b), 15 U.S.C. § 77q – against all Defendants)**

91.     Plaintiffs reallege and incorporate Paragraphs 1 through 80 as if fully set forth herein.

92.     This claim is brought under § 17(a) and (b) of the Securities Act, 15 U.S.C. § 77q, against all Defendants.

93.     The Defendants: (a) employed devices, schemes and artifices in interstate commerce to defraud; (b) made untrue statements of material fact; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon Plaintiffs in violation of § 17(a) and (b) of the Securities Act.

94.     As set forth above, Defendants, individually and in concert, directly and indirectly, represented to Plaintiffs that the investment funds were held in accounts that would

be used for forex trading and investors could withdraw funds from the accounts at any time upon request.

95.     Defendants' representations were material to Plaintiffs and induced Plaintiffs to invest their funds in Defendants' schemes and artifices.

96.     Defendants' representations were made in connection with the purchase of securities.  Plaintiffs invested money in a common enterprise, the Companies, with the expectation of future profits generated by the efforts of Defendants – both individually and in concert.

97.     Defendants utilized means or instruments of communication in interstate commerce to induce Plaintiffs, residing in separate states, to invest in Defendants' securities operated out of Florida and oversees in Hong Kong.

98.     Defendants knew that they in fact did not intend to honor the terms of Plaintiffs' investments and that the statements that Defendants made to solicit Plaintiffs' funds were materially false and misleading.

99.     Had Plaintiffs known that Defendants' representations were false and misleading, Plaintiffs would not have deposited funds with the Companies.

100.    As a result of Defendants' wrongful conduct, as alleged herein, Plaintiffs have suffered economic damages in an amount to be established at trial.

101.    Defendants are jointly and severally liable to Plaintiffs for substantial damages that Plaintiffs have suffered in connection with their CFT and FxWinning's accounts.

**COUNT III**
**(Violation of the Florida Securities and Investor Protection Act, Sections 517.301 and 517.211 – against all Defendants)**

102.    Plaintiffs reallege and incorporate Paragraphs 1 through 80 as if fully set forth herein.

103.     The investments made by Plaintiffs were "securities" as defined by the Florida

Securities and Investor Protection Act, Section 517.301, Florida Statutes, *et seq.* (the "Florida

Act").

104.     Section 517.301 makes it unlawful for a person, in connection with the offer,

sale, or purchase of any investment or security, directly or indirectly:

   a.   To employ any device, scheme, or artifice to defraud;

   b.   To obtain money or property by means of any untrue statement of a material

        fact or any omission to state a material fact necessary in order to make the

        statements made in the light of the circumstances under which they were made,

        not misleading; or

   c.   To engage in any transaction, practice, or course of business which operates or

        would operate as a fraud or deceit upon a person.

105.     As alleged, Defendants violated the Florida Act by, among other things: (i)

employing a device, scheme or artifice to defraud; (ii) making untrue statements of material

facts and omitting to state material facts that would render the statements misleading in light

of the circumstances under which they are made; (iii) engaging in an act, practice, or course of

business which operates or would operate as a fraud or deceit upon a person; and (iv) knowingly

and willfully falsifying, concealing, or covering up, by any trick, scheme, or device, a material

fact, making any false, fictitious, or fraudulent statement or representation, or making or using

any false writing or document, knowing the same to contain any false, fictitious, or fraudulent

statement or entry.

106.     The Florida Act provides for civil liability for these violations:

Any person purchasing or selling a security in violation of s. 517.301, and every
director, officer, partner, or agent of or for the purchaser or seller, if the director, officer,
partner, or agent has personally participated or aided in making the sale or purchase, is
jointly and severally liable to the person selling the security to or purchasing the
security from such person in an action for rescission, if the plaintiff still owns the
security, or for damages, if the plaintiff has sold the security.

Section 517.211.

107.    Plaintiffs are each "person[s] … purchasing the security" from Defendants, and each Defendant constitutes either a person selling the security, or a director, officer or agent of the seller who personally participated or aided in making the sale.

108.    Defendants have directly sold securities to Plaintiffs or have aided in making the sale of securities as a director, officer, partner, or agent of the seller for such securities.

109.    Pursuant to the Florida Act, the Defendants are jointly and severally liable to Plaintiffs as sellers of the securities.

110.    Plaintiffs have been, and continue to be, directly and indirectly injured and damaged, as a result of Defendants' schemes, acts, practices, and courses of business which operated to deceive Plaintiffs relative to the investments in question, pursuant to the securities laws of the State of Florida, and have suffered financial losses in an amount to be proven at trial.

## COUNT IV
## (Breach of Contract – against FxWinning)

111.    Plaintiffs reallege and incorporate Paragraphs 1 through 80 as if fully set forth herein.

112.    Upon information and belief, Plaintiffs and FxWinning entered into an agreement governing the Plaintiffs' investments in their accounts with FxWinning.  The terms of the investment agreement are reflected in FxWinning's terms and conditions, which include the customer agreement.

113.    FxWinning's terms and conditions constitute a valid contract between Plaintiffs and FxWinning.

114.    Pursuant to the investment agreement (as reflected by the terms and conditions), Plaintiffs agreed to invest money in FxWinning accounts subject to a right to withdraw all

available funds from the accounts upon request.  Upon information and belief, FxWinning agreed to manage Plaintiffs' accounts in return for collecting a commission from the accounts.

115.    FxWinning has committed material breaches of the terms and conditions by, among other actions, prohibiting withdrawal of Plaintiffs' funds despite multiple requests.

116.    As a direct result of FxWinning's breaches of the investment agreement (as reflected by the terms and conditions), Plaintiffs have suffered, and continue to suffer, damages in excess of $26 million.

## COUNT V
### (Breach of Fiduciary Duty – against all Defendants)

117.    Plaintiffs reallege and incorporate Paragraphs 1 through 80 as if fully set forth herein.

118.    As alleged herein, Plaintiffs entrusted Defendants (the Companies as well as the Individual Defendants) with millions of dollars of Plaintiffs' funds.

119.    As holders and overseers of Plaintiffs' funds, Defendants owed fiduciary duties to Plaintiffs including, without limitation, duties of good faith and care with regard to Plaintiffs' funds.

120.    By virtue of the conduct and acts described herein, Defendants have breached their fiduciary duties to Plaintiffs.

121.    As a result of Defendants' conduct and actions as described herein, Plaintiffs have been damaged in an amount to be proven at trial, but at least $26,000,000.00.

122.    Defendants' actions were willful and in reckless disregard of Plaintiffs' rights and interests, entitling Plaintiffs to punitive damages in an amount to be proven at trial.

## COUNT VI
### (Fraud in the Inducement – against all Defendants)

123.    Plaintiffs reallege and incorporate Paragraphs 1 through 80 as if fully set forth herein.

124.     As alleged herein, Defendants represented to Plaintiffs, among other things, that CFT and FxWinning were partners, that investing money with FxWinning was the exclusive means by which to gain access to CFT's trading platform, that CFT and FxWinning were operating successful companies, that Defendants would use investment funds to engage in forex trading, and that investors could withdraw the funds invested in the Companies upon request.

125.     Defendants' representations were false and intended to deceive and mislead Plaintiffs as to the terms of the investment opportunity.

126.     Defendants (including de Rocha, Brito, Percy, Cardenas, and Merino, i.e., the "Individual Defendants"), acting personally and as agents and executives of, and in concert with, CFT and FxWinning, fraudulently induced Plaintiffs to transfer funds to the Companies.

127.     As alleged herein, the Companies have failed to honor their own terms and have improperly withheld more than $26 million of Plaintiffs' funds.

128.     As alleged herein, Defendants knew the Companies were operating under common ownership, in concert, and were set up to defraud investors.

129.     Plaintiffs reasonably and justifiably relied on Defendants' representations and, as a direct result of Defendants' representations, invested millions of dollars in their CFT/FxWinning accounts.

130.     Defendants received substantial economic benefit from Plaintiffs' investments.

131.     Upon information and belief, Defendants' actions were willful, malicious, and wanton.

132.     As a result of Defendants' willful, malicious, and wanton conduct, Plaintiffs are entitled to a damages award of over $26,000,000.00, together with punitive damages, costs, and interest, against all Defendants.

**COUNT VII**
**(Negligent Misrepresentations – against all Defendants)**

133.    Plaintiffs reallege and incorporate Paragraphs 1 through 80 as if fully set forth herein.

134.    Defendants provided false information to Plaintiffs regarding the Companies' trading platform and services.

135.    Defendants had a duty to disclose truthful information to Plaintiffs about the Companies' trading platform and services, including historically accurate rates of return and forex trading mechanisms.

136.    Defendants intended for Plaintiffs to rely on the information or knew that Plaintiffs would reasonably rely on Defendants' representations.

137.    Defendants failed to exercise reasonable care in obtaining or communicating the information that was provided to Plaintiffs regarding the Companies' trading platform and services, including historically accurate rates of return and forex trading mechanisms.

138.    Plaintiffs justifiably relied on Defendants' incorrect information and representations.

139.    Plaintiffs have suffered damages in an amount to be determined at trial, but at least $26,000,000.00, as a direct result of Defendants' incorrect information and representations.

**COUNT VIII**
**(Conversion – against all Defendants)**

140.    Plaintiffs reallege and incorporate Paragraphs 1 through 80 as if fully set forth herein.

141.    Defendants accepted millions of dollars from Plaintiffs as a result of representations including the promise that Plaintiffs would have the ability to withdraw their funds upon request, at any time.

142.     To the contrary, Defendants have prevented the withdrawal of Plaintiffs' funds since January 2023.

143.     As of the date of this complaint, Plaintiffs' funds in their CFT/FxWinning accounts total more than $26 million.  Plaintiffs' accounts are identified by the last three digits, above.

144.     Plaintiffs are the rightful owners of the funds in their accounts.

145.     Inconsistent with Plaintiffs' ownership rights, Defendants' refusal to permit Plaintiffs to withdraw funds from their accounts has deprived Plaintiffs of their funds permanently or for an indefinite time.

146.     The actions of Defendants constitute an unlawful conversion of Plaintiffs' interest in the funds.

147.     As a result, Defendants have wrongfully converted $26 million of Plaintiffs' funds.

148.     Plaintiffs are entitled to an award for their damages, plus costs and interest.

### COUNT IX
### (Unjust Enrichment – against all Defendants)

149.     Plaintiffs reallege and incorporate Paragraphs 1 through 80 as if fully set forth herein.

150.     The Defendants will be unjustly enriched if they are allowed to retain Plaintiffs' funds.

151.     As set forth above, Plaintiffs transferred funds to the Companies through their accounts.

152.     Defendants received the funds, and upon information and belief Individual Defendants also obtained commissions and other financial benefits from the deposit of Plaintiffs' funds.

153.     Defendants have failed to release Plaintiffs' funds despite numerous requests in accordance with Plaintiffs' ownership rights in their funds, and their right to demand withdrawal at any time upon request.

154.     It would be inequitable and unjust for Defendants to retain the benefit of the funds (and any commissions or other ill-gotten gains) under the circumstances.

155.     Plaintiffs have been and will continue to suffer damages, in an amount no less than $26,000,000.00, as a result of Defendants' actions.

156.     Plaintiffs are entitled to restitution from Defendants, plus costs and interest.

## COUNT X
### (Civil Conspiracy – against all Defendants)

157.     Plaintiffs reallege and incorporate Paragraphs 1 through 80 as if fully set forth herein.

158.     As set forth above, CFT, FxWinning, and the Individual Defendants acted with a common purpose to defraud potential investors.

159.     Defendants' actions (including the representations discussed above) were done in furtherance of Defendants' common purpose.

160.     Defendants established the Companies, and induced investors with promises of a proprietary algorithm, high returns, and secure and segregated accounts, with a common purpose to defraud Plaintiffs and divest Plaintiffs of millions of dollars.

161.     Plaintiffs have suffered more than $26,000,000.00 in damages as a direct and proximate result of Defendants' conspiracy.

162.     Plaintiffs are entitled to an award of compensatory damages in an amount to be proven at trial, but at least $26,000,000.00, against Defendants, plus costs and interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants as follows:

23

A.  An award of compensatory damages in an amount to be determined at trial, but no less than $26,000,000.00.

B.  An order requiring that Plaintiffs' funds be released and returned to Plaintiffs.

C.  An accounting of all sums received by Defendants (each individually) and any proceeds from the withheld funds.

D.  Disgorgement of any and all ill-gotten gains.

E.  The imposition of a constructive trust of all accounts (of any type, including bank accounts and cryptocurrency wallets) held by Defendants.

F.  An award of punitive damages against Defendants.

G.  An injunction in Plaintiffs' favor enjoining Defendants (and anyone acting in concert with Defendants) from moving, transferring, or otherwise disposing of Plaintiffs' funds.

H.  An award of pre-judgment and post-judgment interest on all amounts.

I.  An award of Plaintiffs' attorneys' fees and costs.

J.  All other and further relief as the Court deems just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs demand a jury trial for all issues so triable.

Respectfully submitted this 17th day of August 2023.

*/s/ Mark A. Salky*
Mark A Salky
Florida Bar No. 58221
Robert S. Galbo
Florida Bar No. 106937
Greenberg Traurig, P.A.
333 S.E. 2nd Avenue, Suite 4400
Miami, FL 33131
Phone: (305) 579-0816
Email: mark.salky@gtlaw.com
　　　　galbor@gtlaw.com

Robert Long
Greenberg Traurig, LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Phone: (214) 665-3659
Email: longr@gtlaw.com

Matthew Hoxsie
Greenberg Traurig, LLP
2375 East Camelback Road, Suite 800
Phoenix, AZ 85016
Phone: (602) 445-8471
Email: hoxsiem@gtlaw.com

*Attorneys for Plaintiffs*