United States District Court
for the
Southern District of Florida

Kristoffer Jon Hind, and others,  )
Plaintiffs,                        )
                                   )
v.                                 )   Civil Action No. 23-23139-Civ-Scola
                                   )
FxWinning Limited, and others,     )
Defendants.                        )

## Omnibus Order on Defendants' Motions to Dismiss

This matter is before the Court on the motion to dismiss the amended complaint filed by Defendants CFT Solutions, LLC, Renan De Rocha Gomes Bastos, and Arthur Percy (ECF No. 64) and the motion to dismiss filed by Defendants FxWinning Limited, Rafael Brito Cutie, Roman Cardenas, and David Merino (ECF No. 66). The Plaintiffs have responded to each motion (ECF Nos. 75, 76), and both groups of Defendants filed replies (ECF Nos. 81, 91). The Court has considered the briefing, the record, the applicable legal authorities, and is otherwise fully advised. The Court **grants in part and denies in part** both motions to dismiss for the reasons discussed below. (**CFT Mot., ECF No. 64; FX Mot., ECF No. 66**.)[1]

1. **Background**[2]

The Plaintiffs in this case are 20 individuals who invested in what they believed to be a once-in-a-lifetime opportunity to profit on foreign exchange trading technology that guaranteed high returns. Instead, they have not seen a dime of profit or recouped their invested funds.[3]

---

[1] The Court will reference the CM/ECF-generated pagination that appears in the header of each page of a document, not a document's internal pagination.

[2] This background is based on the allegations in the amended complaint. (Am. Compl., ECF No. 42.) For purposes of evaluating the CFT and FX Defendants' motions, the Court accepts the Plaintiffs' factual allegations as true and construes those allegations in the light most favorable to the Plaintiffs per Federal Rule of Civil Procedure 12(b)(6). The Court will consider only the allegations contained in the amended complaint. "Rule of Civil Procedure 12(d) provides that '[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *McClure v. Oasis Outsourcing II, Inc.*, 674 F. App'x 873, 875 (11th Cir. 2016). The Court therefore only considers materials outside the amended complaint where appropriate; specifically, in the contexts of the parties' disputes over personal jurisdiction, service of process, and forum non conveniens, as detailed herein.

[3] The Plaintiffs are Kristoffer Jon Hind, Jason Thomas Waiton, Christopher Campbell, Paul Douglas Stoeppelwerth, Lucas Longmire, Thomas Blair Phillips, Tyler Jenkins, Jorden David

The parties selling access to this technology were Defendants FxWinning Limited and CFT Solutions, LLC. FxWinning is a Hong Kong-registered "brokerage firm" without a principal place of business but with "workspaces" in Cyprus, Dubai, and Miami, Florida and servers in New York and London. (Am. Compl. ¶¶ 28, 45, 48.) FxWinning advertises on its website a "powerful trading platform" that guarantees "the best spreads and trading conditions." (*Id.* ¶ 45.) Defendants Rafael Brito Cutie (the CEO) and David Merino created FxWinning in 2020, and Defendant Roman Cardenas is FxWinning's vice president. (*Id.* ¶ 32.) FxWinning, Brito Cutie, Merino, and Cardenas are collectively referred to herein as "the FX Defendants."

CFT Solutions, a Delaware limited liability company with its principal place of business in Miami, Florida, was founded in 2019 by its CEO, Defendant Ronan De Rocha Gomes Bastos ("Bastos"). (*Id.* ¶¶ 27, 39.) CFT offers a "High-Frequency Trading System" that "uses high-power computers to execute a large number of orders at extremely high speeds, detecting emerging trends in a fraction of a second that accordingly allows traders to make profits even with very small price fluctuations." (*Id.* ¶ 40 (cleaned up).) Customers were told that they could use CFT's system by opening a brokerage account with FxWinning. (*Id.* ¶ 42.) CFT, Bastos, and Arthur Percy, CFT's COO, are collectively referred to herein as the "CFT Defendants."

CFT created a Telegram channel on July 19, 2021 to share information about the "High-Frequency Trading System" online, including through advertising the system's profitability (*e.g.*, in November 2021 that "the result of the last 12 months" was a 410% profit). (*Id.* ¶¶ 51, 54.) On December 10, 2021, CFT posted on the Telegram channel that "Mastermind in January will be January 21-23 in MIAMI / Florida . . . to network and create relationships with other customers" and that "[t]he broker will also be present so that clients can meet executives from fxwinning which is the broker we use and offers all the support so that we can run our software at high performance[.]" (*Id.* ¶¶ 55-56.) Bastos, the founder of CFT, also hosted monthly Zoom sessions where he promoted investing with CFT and FxWinning, commenting that he had "zero" issues with FxWinning. (*Id.* ¶ 62.)

---

Neil Malcolm, Robert Taylor Yates, Rafael Reyes Salmeron, Ryan Anthony Floyd, Matt Scott Vogel, Mark Alan Bentley, Peter Shane Donahue, Agata Agnieszka Powers, Avya Lindsey Waiton, Timothy Michael Morgan, Tarsis Carvalho Humphreys, Zachary Michael Sellers, and Brandon Michael Harrold. Hind, Waiton, Stoeppelwerth, Jenkins, Malcolm, Salmeron, Floyd, Vogel, Bentley, Donahue, Powers, Morgan, Tarsis, Sellers, and Harrold have agreed to arbitrate their claims against Defendants CFT, Bastos, and Percy pursuant to their limited power-of-attorney agreements but remain in this action with respect to their claims against FxWinning, Brito, Cardenas, and Merino.

The Plaintiffs opened trading accounts with FxWinning, agreed to FxWinning's terms and conditions, and signed limited power-of-attorney agreements authorizing CFT to effectuate trading on the FxWinning accounts. (*Id.* ¶¶ 63-64, 68.) CFT charged 40-50% account management fees for its services pursuant to the limited power-of-attorney agreements. (*Id.* ¶ 64.)

After the Plaintiffs deposited their funds, "CFT presented a purported KPMG audit report stating that all trades had been reviewed." (*Id.* ¶ 80) This report turned out to be false. (*Id.*) The Defendants also provided Plaintiffs with a "CFT dashboard showing the success of the Companies' forex trading." (*Id.* ¶ 81.) CFT also stated that "the Companies' trading was 71% successful and 'one of the best software [sic] in the world.'" (*Id.* ¶ 82.)

In December 2022 and January 2023, the Defendants "began informing Plaintiffs that their withdrawals would be delayed" from 24-48 hours to several days and then to two weeks. (*Id.* ¶¶ 84-85.) At the end of February 2023, the Defendants told the Plaintiffs that they would not be able to make any withdrawals because of new know-your-customer and anti-money laundering ("KYC/AML") controls adopted by FxWinning's liquidity provider. (*Id.* ¶ 87.) Through the Telegram channel, CFT stated that "After all the Kyc process and regulation that the brokerage is now doing with the bodies, it will be easier because we will have access to Asian and other liquidity providers that the brokerage did not have before 😊" and that "[t]hings are going to get A LOT better in the coming months! Just wait and watch.." (*Id.* ¶ 88.) In April 2023, FxWinning maintained to the Plaintiffs that "the time to process withdrawals would depend on the KYC/AML process." (*Id.* ¶ 91.) In late May and early June 2023, FxWinning sent emails to the Plaintiffs representing that "their applications/updated information were 'successfully completed' and that FxWinning would process Plaintiffs' withdrawals with [sic] '15 working days[.]'" (*Id.* ¶ 93.) FxWinning and Brito Cutie continued to maintain this position until June 20, 2023, when FxWinning posted a notice that it would cease operations on June 22, 2023 and that withdrawals would be available until June 30, 2023. (*Id.* ¶¶ 96-97.) FxWinning never released the Plaintiffs' funds, which total approximately $27,311,827.00. (*Id.* ¶¶ 98, 102.)

The Plaintiffs claim that the Defendants induced the Plaintiffs to open accounts with FxWinning/CFT, knowing that no trades would take place, and misappropriated the funds instead of executing foreign exchange trades or allowing the Plaintiffs to make any withdrawals.

The first amended complaint includes 11 counts against the Defendants. Four are alleged statutory violations: 1) violation of the Securities Act of 1933 (sale of unregistered securities) against CFT and FxWinning; 2) violation of the

Securities Exchange Act of 1934 and Rule 10b-5 (securities fraud) against CFT, FxWinning, Bastos, Cardenas, and Brito Cutie; 3) alternatively, violations of the Commodity Exchange Act, sections 6 and 25 (fraud and the sale of a commodity by an unregistered broker), against CFT, FxWinning, Bastos, Cardenas, and Brito Cutie; and 4) violation of the Florida Securities and Investor Protection Act, sections 517.301 and 517.211 (securities fraud), against CFT, FxWinning, Bastos, and Brito Cutie. Count 5 is for breach of contract against FxWinning, followed by six tort claims: 6) breach of fiduciary duty against all Defendants; 7) fraud in the inducement against CFT, FxWinning, Bastos, Cardenas, and Brito Cutie; 8) negligent misrepresentation against CFT, FxWinning, Bastos, Cardenas, and Brito Cutie; 9) conversion against all Defendants; 10) unjust enrichment against all Defendants; and 11) civil conspiracy against all Defendants.

The CFT Defendants and FX Defendants have separately moved to dismiss the first amended complaint on various grounds. (ECF Nos. 64, 66.)

## 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Under Federal Rule of Civil Procedure 8, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Id.*

In applying the Supreme Court's directives in *Twombly* and *Iqbal*, the Eleventh Circuit has provided the following guidance to the district courts:

> In considering a motion to dismiss, a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Further, courts may infer from the factual allegations in the complaint obvious alternative explanation[s],

which suggest lawful conduct rather than the unlawful conduct
the plaintiff would ask the court to infer.

*Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th
Cir. 2011) (cleaned up). "This is a stricter standard than the Supreme Court
described in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which held that a
complaint should not be dismissed for failure to state a claim 'unless it appears
beyond doubt that the plaintiff can prove no set of facts in support of his claim
which would entitle him to relief.'" *Mukamal v. Bakes*, 378 F. App'x 890, 896
(11th Cir. 2010). These precepts apply to all civil actions, regardless of the
cause of action alleged. *Kivisto*, 413 F. App'x at 138.

Where a cause of action sounds in fraud, however, Federal Rule of Civil
Procedure 9(b) must be satisfied in addition to the more relaxed standard of
Rule 8. Under Rule 9(b), "a party must state with particularity the
circumstances constituting fraud or mistake," although "conditions of a
person's mind," such as malice, intent, and knowledge, may be alleged
generally. Fed. R. Civ. P. 9(b). "The 'particularity' requirement serves an
important purpose in fraud actions by alerting defendants to the precise
misconduct with which they are charged and protecting defendants against
spurious charges of immoral and fraudulent behavior." *W. Coast Roofing &
Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008)
(cleaned up). "When a plaintiff does not specifically plead the minimum
elements of their allegation, it enables them to learn the complaint's bare
essentials through discovery and may needlessly harm a defendant's goodwill
and reputation by bringing a suit that is, at best, missing some of its core
underpinnings, and, at worst, [grounded on] baseless allegations used to
extract settlements." *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d
1301, 1313 n.24 (11th Cir. 2002). Thus, the Rule's "particularity" requirement
is not satisfied by "conclusory allegations that certain statements were
fraudulent; it requires that a complaint plead facts giving rise to an inference of
fraud." *W. Coast Roofing & Waterproofing*, 287 F. App'x at 86. To meet this
standard, the complaint needs to identify the precise statements, documents,
or misrepresentations made; the time and place of, and the persons
responsible for, the alleged statements; the content and manner in which the
statements misled the plaintiff; and what the defendant gained through the
alleged fraud. *Id.*

With these standards in mind, the Court turns to the Plaintiffs' amended
complaint to see whether their claims are sufficiently alleged to withstand
dismissal.

### 3. Analysis

### A. Preliminary issues

The Court first considers the Defendants' arguments on whether this Court has personal jurisdiction over each Defendant, whether service has been properly completed, and whether this is the proper forum for the dispute, before turning to the Defendants' arguments regarding the substantive claims.

#### 1. *Personal jurisdiction*

The FX Defendants assert that the Court should dismiss the claims against them for lack of personal jurisdiction. (FX Mot. at 19-22.) "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). A defendant challenging personal jurisdiction must present evidence to counter the plaintiff's allegations. *Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009). Once the defendant has presented sufficient evidence, "the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." *Id.*

"There are two types of personal jurisdiction: specific and general." *Madara v. Hall*, 916 F.2d 1510, 1516 n.7 (11th Cir. 1990). "General personal jurisdiction is based on a defendant's substantial activity in [a state] without regard to where the cause of action arose," whereas "specific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within [a state] ...." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (cleaned up).

#### (a) General jurisdiction

"[A] defendant is subject to 'general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in 'substantial and not isolated activity in Florida.'" *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018). "Because Florida's long-arm provision extends to the limits on personal jurisdiction imposed by the Due Process Clause, the Court need only determine whether the exercise of general jurisdiction . . . would exceed constitutional bounds." *Id.* at 1316 (cleaned up). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile. . . ." *Daimler AG*, 571 U.S. at 137 (cleaned up). "Beyond that, the Supreme Court has provided two other instances in which the exercise of general jurisdiction over an individual is proper: where the

individual consents to the forum's jurisdiction, and where the individual is present within the forum when served with process." *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1350 (S.D. Fla. 2017) (Gayles, J.) (cleaned up). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG*, 571 U.S. at 137 (cleaned up).

The Plaintiffs claim that three of the FX Defendants are subject to general jurisdiction in Florida. (Pls.' Resp. to FX Mot. at 14-16.) According to the amended complaint, FxWinning systematically targeted Florida residents, Cardenas "resides partially in Miami-Dade County" and Merino "has conducted business in Miami-Dade County" in addition to being the founder and owner of a Florida corporation with its principal place of business in Miami-Dade County. (Am. Compl. ¶¶ 32-33.) But even if these allegations were sufficient to make a prima facie claim of general personal jurisdiction, the FX Defendants have successfully rebutted the claims with declarations stating that they do not reside in the United States or conduct business for FxWinning in Florida (Exs. B, C to FX Motion, ECF Nos. 66-2, 66-3), shifting the burden back to the Plaintiffs to "prove—not merely allege—jurisdiction by affidavits, testimony, or other documents." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214-15.

The Plaintiffs, in turn, cite statements made in CFT's second amended complaint against FxWinning, filed in state court, to establish FxWinning's, Cardenas's, and Merino's systematic ties to Florida. According to that complaint, FxWinning sent "thousands of messages . . . to Florida" and hired and paid Florida residents for their work on behalf of FxWinning. (Pls.' Resp. to FX Mot. at 16.) However, the FX Defendants have disputed these facts, and regardless, they do not show that FxWinning was "essentially at home" in Florida. *Daimler AG*, 571 U.S. at 127.

The Plaintiffs' argument is stronger with respect to Cardenas, who owns real property in Miami-Dade County, has obtained a Florida driver's license listing a Florida address as his residence as recently as January 13, 2020, registered three cars under his name in Florida from 2018 to 2021, registered to vote in the 2022 Miami-Dade County general election, and has paid taxes in the state. (Pls.' Resp. to FX Mot. at 14-15.) These facts, if true, make it a close call as to whether the Court has general personal jurisdiction over Cardenas. But the Plaintiffs do not cite a single case—binding or otherwise—where a court has found general jurisdiction based on similar facts, let alone where those facts are based only on allegations made in a complaint in a separate case. Cardenas states in his declaration that he resides full time in Cyprus, and the Eleventh Circuit and courts in this district stop short of exercising general personal jurisdiction in the absence of one of the three categories

accepted by the Supreme Court in *Daimler* (domicile, physical presence, or consent). (*See* Cardenas Decl., ECF No. 66-2 ¶ 5.) Because the Plaintiffs have not established that either domicile, physical presence, or consent are present here, general personal jurisdiction is lacking. Cardenas is therefore not subject to the general personal jurisdiction of this Court.

With respect to Merino, the Plaintiffs respond by citing business records showing that Merino has created, owned, and operated three Florida companies and has purchased real property in Miami-Dade County. (Pls.' Resp. to FX Mot. at 15.) These activities are also insufficient to establish general personal jurisdiction because they do not establish that Miami-Dade County (or Florida) is his domicile, and Merino was not personally served in the state. The Court therefore turns to whether it may exercise specific personal jurisdiction over the FX Defendants.

### (b) Specific jurisdiction

Where a court lacks general personal jurisdiction, Florida's long-arm statute permits a court to exercise specific personal jurisdiction over a person who commits a tortious act within Florida or breaches a contract by failing to perform acts required by the contract in Florida. Fla. Stat. § 48.193(1)(a)(2), (1)(a)(7). This long-arm jurisdiction even extends to defendants who committed their tortious acts outside the state if their acts "cause injury in Florida." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1216 (11th Cir. 1999). After ensuring that it has personal jurisdiction over a particular defendant under the forum state's long-arm statute, a court must next ensure that invoking personal jurisdiction would not violate the defendant's Due Process rights.

According to the Plaintiffs, this case arises from FxWinning and the other FX Defendants' engagement in a business venture in Florida, subjecting them to Florida's long-arm statute. (Pls.' Resp. to FX Mot. at 16.) The FX Defendants engaged in a business venture with CFT, whose principal place of business is in Florida, to solicit investments, including from Florida residents. (*Id.*) The Plaintiffs also provide the declaration of Thomas Blair Phillips describing Cardenas (FxWinning's vice president) attending a yacht party in Miami, Florida with CFT where Bastos made a presentation regarding the investments with CFT and FxWinning, a point which Cardenas only partially disputes. (*Id.* at 7; Ex. D to Pls.' Resp. to FX Mot., ECF No. 75-4; FX Mot. at 21; Ex. B to FX Mot., ECF No. 66-2.) Additionally, according to the Plaintiffs, the FX Defendants committed torts that injured Plaintiffs located in Florida by conspiring to defraud them and stealing their funds. (Pls.' Resp. to FX Mot. at 7.) Finally, FxWinning breached its obligations to Florida counterparties by failing to honor withdrawal requests as alleged in count 5. (*Id.* at 17.)

The FX Defendants' insistence that FxWinning "has never had any contacts with Florida" that would support personal jurisdiction, including that FxWinning was unaware that its clients were from Florida and that FxWinning does not maintain a workspace in Florida or conduct business in Florida at all, are insufficient to rebut these arguments. (FX Mot. at 22.) Indeed, the FX Defendants do not directly address the Plaintiffs' argument that FxWinning and its officers engaged in a business venture and conspiracy with CFT, a Florida-based company, to defraud investors located in Florida. (*See* Pls.' Resp. to FX Mot. at 16.; FX Reply, ECF No. 81 at 8-9.) The Court may therefore exercise specific personal jurisdiction over the FX Defendants under Florida's long-arm statute as long as doing so would not violate the Defendants' Due Process rights.

When assessing whether the Court's exercise of jurisdiction over the Defendants would violate their Due Process rights, the Eleventh Circuit uses a three-part test:

> (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum;
>
> (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and
>
> (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (cleaned up).

As to the first prong (*arising out of or relatedness*) a court should "focus on the direct causal relationship between the defendant, the forum, and the litigation." *Id.* at 1355-56. As to the second prong (*purposeful availment*) a court may apply the traditional *minimum-contacts test*, or, in intentional-tort cases, may utilize the *effects test*. "Under the 'effects test,' a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Id.* at 1356 (cleaned up). "This occurs when the tort: (1) was intentional; (2) was aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Id.* (cleaned up). As to the third prong (*fair play and substantial justice*) a court should "consider these factors: (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Id.* at 1358 (cleaned up).

First, as discussed, the Plaintiffs' claims arise in part from and relate to the FX Defendants' contacts with the forum, most obviously through the joint venture with CFT, whose principal place of business is in Florida. Additionally, the FX Defendants have purposely availed themselves of the privilege of conducting activities within Florida both under the minimum-contacts test and the effects test. Second, as already discussed, the FX Defendants have minimum contacts with the state of Florida, but even if they did not, their alleged tortious acts were aimed at Florida residents, for example through discussions taking place in Miami, and have had effects in Florida by depriving Florida residents of large sums of money. The FX Defendants should have "reasonably anticipated that [they] might be sued [in Florida] in connection with [their] activities there." *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008).

Finally, as to the third prong of the due process analysis, the burden on the FX Defendants of litigating in Florida is not heavy enough to outweigh the interests of many of the Plaintiffs (and the CFT Defendants) in litigating in their home state. As discussed in more detail below with respect to the appropriate forum for this dispute, the interests of this forum in adjudicating a dispute involving millions of dollars allegedly stolen from forum residents is strong, and no other jurisdiction has a similarly strong interest. The exercise of personal jurisdiction would not violate the FX Defendants' Due Process rights, and the Court may therefore exercise specific personal jurisdiction over the FX Defendants.

### (2) Motion to quash service on the FX Defendants

The FX Defendants next argue that service on FxWinning, Brito Cutie, Cardenas, and Merino should be quashed because the Plaintiffs improperly used alternative methods to serve process following the Court's authorization of those methods. (FX Mot. at 25-29; Orders on Alt. Service of Process, ECF Nos. 22, 52.) They argue that "[f]irst and foremost, Plaintiffs must attempt service through the Hague Convention" because the Plaintiffs have not established that the addresses of FX, Brito Cutie, Merino, and Cardenas are unknown. (FX Mot. at 26.) The FX Defendants' position is that the Plaintiffs' service via mail and otherwise were premature because they were required to attempt service through the Hague Convention (the Court reads this as meaning that the Plaintiffs were required to serve the foreign Defendants through the relevant countries' respective Central Authorities) before requesting authorization to use alternative service methods. Furthermore, they argue that service via e-mail was improper because the Hague Convention does not expressly authorize service via e-mail. (FX Mot. at 28.) The Court disagrees on both fronts.

Two rules of federal civil procedure are relevant here: Fed. R. Civ. P. 4(f) (Service Upon Individuals in a Foreign Country) and Fed. R. Civ. P. 4(h) (Service of Process Upon Corporations and Associations). *See Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 921 (11th Cir. 2003). "Rule 4(h) provides that a foreign corporation may be served in any manner prescribed by Rule 4(f) for serving an individual, except for personal delivery...." The relevant provisions of Rule 4(f), in turn, provide:

> (f) Serving an Individual in a Foreign Country. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:
>
> > (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; [or] ...
> >
> > (3) by other means not prohibited by international agreement, as the court orders." *Int'l Designs Corp., LLC v. Qingdao SeaForest Hair Prod. Co.*, No. 17-60431-CIV, 2018 WL 2364297, at *2 (S.D. Fla. Jan. 4, 2018) (Moreno, J.).

The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 658 U.N.T.S. 16, applies for purposes of serving a foreign defendant in another country that has ratified the Hague Convention unless the Defendant's address is unknown. *See Mycoskie, LLC v. 1688best*, No. 18-cv-60925, 2018 WL 4775643, at *1 (S.D. Fla. July 2, 2018) (Moore, J.) ("Article 1 of the Hague Service Convention states that '[t]his Convention shall not apply where the address of the person to be served with the document is not known.'"). If the Convention applies, plaintiffs must use means of service permitted thereunder. These include submitting a request to the target country's Central Authority or an alternative means if the target country has not objected to that method, including service through diplomatic and consular agents and service by postal mail. *See* Convention, Art. 10(a)-(c); *Water Splash, Inc. v. Menon*, 581 U.S. 271, 275 (2017). "Courts have clearly stated that Rule 4(f)(3) is not merely a 'last resort' to be used only after other methods of service have failed; rather, Rule 4(f)(3) stands on equal footing with the other service methods enumerated in Rule 4(f)." *Int'l Designs Corp., LLC v. Qingdao SeaForest Hair Prod. Co.*, No. 17-60431-CIV, 2018 WL 2364297, at *2 (S.D. Fla. Jan. 4, 2018) (Moreno, J.) (citing *Brookshire Bros., Ltd. v. Chiquita Brands Int'l, Inc.*, No. 05-21962, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007) (Cooke, J.)).

Where a signatory nation *has* objected to the alternative means of service provided by the Hague Convention, that objection is expressly limited to those means and does not represent an objection to other forms of service, such as e-mail or website posting. *See Stat Med. Devices, Inc. v. HTL-Strefa, Inc.*, No. 15-20590-CIV, 2015 WL 5320947, at *3 (S.D. Fla. Sept. 14, 2015) (noting that an objection to the alternative forms of service set forth in the Hague Convention is limited to the specific forms of service objected to.) Therefore, even when a country has objected to an alternative means of service, "that objection is expressly limited to those means and does not represent an objection to other forms of service, such as e-mail or publication." *Karsten Mfg. Corp. v. Store*, No. 18-61624-CIV, 2018 WL 8060707, at *1 (S.D. Fla. July 26, 2018) (Altonaga, C.J.). "A court acting under Rule 4(f)(3) therefore remains free to order alternative means of service where a signatory nation has not expressly objected to those means." *Id.* All that is required is that the proposed service is not prohibited by international agreement and such service comports with Constitutional due process, meaning that it is "reasonably calculated" to provide the defendants notice and an opportunity to defend. See *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002); *see also Chanel, Inc. v. Zhixian*, No. 10-cv-60585, 2010 WL 1740695, at *2-3 (S.D. Fla. Apr. 29, 2010) (Cohn, J.).

With this background, the Court considers whether the Plaintiffs have effectively served FxWinning, Brito Cutie, Merino, and Cardenas. First, FxWinning is a Hong Kong limited company with locations in Hong Kong and Saint Vincent and the Grenadines, and FxWinning's Hong Kong address is known. (Am Compl. ¶ 28.) The Hague Convention therefore applies to the Plaintiffs' service of FxWinning, and the Plaintiffs were required to serve FxWinning via the Hong Kong Central Authority or an alternative means that Hong Kong has not objected to, except for personal delivery because FxWinning is a company. *See* Fed. R. Civ. P. 4(h). The "Special Administrative Region" of Hong Kong has not objected to service via postal channels or e-mail under Article 10 of the Convention. *China (Hong Kong SAR) - Other Authority (Art. 18) & Practical Information*, HAGUE CONF. ON PRIV. INT'L L., https://www.hcch.net/en/states/authorities/details3/?aid=393. Thus, mail is a permissible means of service of FxWinning in Hong Kong, although the Plaintiffs' mail service via UPS appears to have failed here. (Pls.' Resp. to FX Mot. at 21.) However, the Court authorized alternative service via e-mail on FxWinning, and FxWinning does not explain in its motion how sending e-mails to the addresses published on its website would not fulfill due process strictures. And the Court considered that the methods of service were reasonably calculated to apprise FxWinning of this lawsuit when authorizing

alternative service of process. (*See* Order, ECF No. 22 at 2-3.) The Court therefore declines to quash service of process on FxWinning.

Next, both Defendants Brito Cutie and Merino have known addresses outside the United States, and the Hague Convention therefore applies. Brito Cutie resides in the United Arab Emirates and Cyprus, and Merino lives in Spain. (Brito Cutie Decl., ECF No. 66-1 ¶ 4; Am. Compl. ¶ 33.) Similar to Hong Kong, Cyprus and Spain have not objected to the use of "postal channels" for service of process, nor have they specifically objected to e-mail service. *See Cyprus - Central Authority & Practical Information*, HAGUE CONF. ON PRIV. INT'L L., https://www.hcch.net/en/states/authorities/details3/?aid=50; *Spain - Central Authority & Practical Information*, HAGUE CONF. ON PRIV. INT'L L., https://www.hcch.net/en/states/authorities/details3/?aid=273. After the Court granted the Plaintiffs' motion for alternative service of process, the Plaintiffs served notice of this lawsuit to Brito Cutie and Merino via postal mail in Cyprus and Spain, respectively, and via WhatsApp and e-mail. (Hoxsie Decl., ECF No. 24-1 ¶¶ 3-10.) As explained above, these methods are not prohibited by international agreement and were reasonably calculated to apprise Brito Cutie and Merino of this lawsuit.

With respect to Cardenas, the Plaintiffs attempted service at the address listed on his Florida driver's license multiple times before his counsel represented to the Plaintiffs that Cardenas resides in Cyprus. The Plaintiffs were unable to identify a Cypriot address for him despite diligent efforts, as discussed in the Court's order granting the Plaintiffs' motion for authorization for alternative service of process. (ECF No. 52.) As discussed in the order, because the Hague Convention does not apply where a defendant's address is unknown, the Plaintiffs need only ensure that service comports with Constitutional due process in serving Cardenas. *See Rio Props.*, 284 F.3d at 1016. The Court concluded that the Plaintiffs had done so in its earlier order, and the Defendants have not rebutted the showing that alternative service was appropriate. The Court therefore will not quash service on the FX Defendants.

### (3) Forum non conveniens

Next, the FX Defendants urge the Court to dismiss this action based on the doctrine of forum non conveniens, arguing that Hong Kong is an adequate alternative forum and that the Southern District of Florida presents "oppressiveness and vexation" to the FX Defendants. (FX Mot. at 23-24.) Ordinarily, to obtain dismissal based on *forum non conveniens*, the moving party must demonstrate that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or

prejudice." *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014). In analyzing these factors, a court "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff," *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004) (Altonaga, J.), but "may consider matters outside the pleadings." *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317,1320 (S.D. Fla. 2000) (Gold, J.); *see also Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 (2013) ("In the typical case not involving a forum-selection clause, a district court … must evaluate both the convenience of the parties and various public-interest considerations.").

The Plaintiffs respond—and the Court agrees—that these factors do not weigh in favor of dismissing the case in favor of Hong Kong. (Pls.' Resp. to FX Mot. at 19-21.) First, it does not appear that all Defendants would necessarily be subject to the jurisdiction of Hong Kong courts, as only FxWinning has connections there. Similarly, there are few private interests that weigh in favor of the Plaintiffs re-filing in Hong Kong—most of the parties are U.S.-based, and the Defendants do not point to any evidence that would be more difficult to obtain from the United States compared to Hong Kong. (*See* FX Mot. at 24.) While the FX Defendants are based outside of the United States, that alone is insufficient to justify dismissal on the basis of forum non conveniens. The inconvenience to the Plaintiffs of re-filing in a jurisdiction where none of them reside and where few (if any) of the events leading to this litigation took place weighs heavily against dismissal. And courts apply a presumption of convenience to U.S. residents suing in U.S. courts. *Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, 1059 (11th Cir. 2009). Finally, Florida appears to have a significantly stronger public interest in this dispute because, according to the amended complaint, 10 of its residents were victims of a lucrative fraudulent scheme at the hands of conspirators including a Florida-headquartered business. The Court therefore declines to dismiss the amended complaint on the basis of forum non conveniens.

The Defendants have failed to establish that the Court lacks personal jurisdiction over the FX Defendants, that service on the FX Defendants should be quashed, or that the case should be dismissed pursuant to the doctrine of forum non conveniens. The Court will therefore move to the Defendants' arguments for dismissal of the Plaintiff's substantive claims.

**B. Statutory claims**

The FX and CFT Defendants argue that the Plaintiffs have failed to state a claim under the Securities Act of 1933 (count 1), the Securities Act of 1934 (count 2), the Commodity Exchange Act (count 3), and the Florida Securities

and Investor Protection Act ("FSIPA") (count 4). The Court addresses the Defendants' arguments regarding each in turn, before moving to the Plaintiffs' claims in tort.

### (1) Counts 1-3 - Whether the Plaintiffs have alleged domestic transactions

The Plaintiffs make three federal statutory claims: 1) unregistered sale of securities in violation of the Securities Act of 1933 (the "1933 Act") against CFT and FxWinning; 2) securities fraud in violation of the Securities Exchange Act of 1934 (the "1934 Act") against CFT, FxWinning, Bastos, Cardenas, and Brito Cutie, and 3) in the alternative, violation of the Commodity Exchange Act against CFT, FxWinning, Bastos, Cardenas, and Brito Cutie.

CFT moves to dismiss counts 1-3 on the grounds that the application of the securities laws and the Commodity Exchange Act ("CEA") to this dispute would constitute an impermissibly extraterritorial application of U.S. law. The CFT Defendants argue that the Plaintiffs have failed to plead a sufficient nexus to the United States to state a claim because the securities laws and the Commodity Exchange Act do not apply extraterritorially.[4] (CFT Mot. at 4-5.) The FX Defendants also briefly make this argument, but do not conduct any analysis. (FX Mot. at 10.)

As the Supreme Court established in *Morrison*, claims under the securities laws must arise from "domestic transactions," *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 266-67 (2010), and other courts have held that the same logic applies to the Commodity Exchange Act. *See, e.g.*, *Loginovskaya v. Batratchenko*, 764 F.3d 266, 271 (2d Cir. 2014) (citing *Starshinova v. Batratchenko*, 931 F. Supp. 2d 478, 485-86 (S.D.N.Y. 2013)). For a transaction in securities not registered on a U.S. exchange to be sufficiently "domestic" to fall within the scope of the securities laws, the purchase or sale must have been made in the United States. *See Morrison*, 561 U.S. at 269-70. This "bright-line" transactional test applies "regardless of whether the underlying fraudulent conduct occurs in or affects the United States." *Quail Cruises Ship Mgmt. Ltd. v. Agencia de Viagens CVC Tur Limitada*, 645 F.3d 1307, 1310 (11th Cir. 2011). "The Supreme Court has not further defined what it means for a purchase or sale to occur in the United States, although the Eleventh Circuit has noted it is sufficient to allege that a transaction was closed, such that title to the shares was transferred domestically." *Zalazar v.*

---

[4] The Plaintiffs do not attempt to argue that any of the relevant statutory provisions apply extraterritorially. (Pls.' Resp. to CFT Mot. at 3.)

*Cap. Force LLC*, No. 23-21512-CIV, 2023 WL 4186397, at *5 (S.D. Fla. June 26, 2023) (Altonaga, J.) (cleaned up) (citing *Quail Cruises*, 645 F.3d at 1310).

The CFT Defendants argue that the Plaintiffs "allege no facts concerning where or how the subject transactions occurred or where irrevocable liability for same was to be." (CFT Mot. at 6.) They claim that the Plaintiffs do not allege that the transactions between the Plaintiffs and the Defendants took place within the United States. (CFT Mot. at 6.) Instead, the CFT Defendants argue that the securities were held with FxWinning, a Hong Kong company with no alleged operations in the United States. (*Id.*)

In response, the Plaintiffs point to the allegations that the Plaintiffs "signed limited power of attorney (LPOA) agreements with CFT, prepared initially on FxWinning letterhead, that stated they would be handled by CFT's Back-Office Department . . . located in the United States" and that "CFT ran its purported trading out of its office in Florida." (Pls.' Resp. to CFT Mot. at 4 (citing Am. Compl. ¶ 27).) The Plaintiffs further claim that a number of the LPOAs included choice-of-law and choice-of-forum clauses providing for the application of Delaware law in Florida courts. The Plaintiffs also cite their own and CFT's residence in the United States along with the allegation that the Plaintiffs "were solicited in the United States, possessed title to their accounts in the United States, and accordingly that any withdrawals would be paid to the Plaintiffs in the United States." (*Id.* (citing Am. Compl. ¶¶ 7-27, 37-38, 55-56, 63-64, 77-79).)

In combination, the Plaintiffs' allegations are sufficient to plausibly infer that the transactions took place domestically. The Plaintiffs, most of whom are U.S. residents, made investments with FxWinning and CFT, a U.S. company with its principal place of business in the United States. At this early stage of litigation, these allegations are sufficient to raise the plausible inference that the application of the securities laws and CEA to the transactions would not be impermissibly extraterritorial. The Defendants do not cite—and the Court has not identified—any cases where a court has found at the motion to dismiss stage that the application of U.S. securities laws or the CEA to transactions involving U.S. residents investing directly with a U.S. company would be impermissibly extraterritorial. The Court therefore finds that the application of the securities laws and CEA to the facts alleged in the amended complaint would not be impermissibly extraterritorial.

### (2) *Securities Act of 1933 – Count 1 against Defendants CFT and FxWinning*

To establish a prima facie case under Section 12 of the Securities Act of 1933, the plaintiff must allege (1) the sale or offer to sell securities; (2) the

absence of a registration statement covering the securities; and (3) the use of the mails or facilities of interstate commerce in connection with the sale or offer. *Swenson v. Engelstad*, 626 F.2d 421, 424-25 (5th Cir. 1980).[5] In *Pinter v. Dahl*, the Supreme Court articulated two circumstances in which a defendant can be considered one who "sold" unregistered securities. 486 U.S. 622 (1988). The defendant must either (1) "be the person who transfers title to, or other interest in, that property;" or (2) "successfully solicits the purchase, motivated at least in party by a desire to serve his own financial interests or those of the securities owner." *Id.* at 642, 647.

   *(a) Whether the Defendants sold a "security"*

   The FX Defendants assert that the Plaintiffs' investments with FX and CFT fall outside the scope of the federal securities laws because the 1933 and 1934 Acts exclude foreign currency from the definition of "security" and the Plaintiffs' accounts do not constitute investment contracts as defined by the Supreme Court. (FX Mot. at 5.) They also assert that the amended complaint fails to allege the third element of a violation, "the use of the mails or facilities of interstate commerce . . . ." (FX Mot. at 7.)

   "The Securities Act of 1933 defines a "security" to include many things, including an "investment contract." *Fedance v. Harris*, 1 F.4th 1278, 1287 (11th Cir. 2021) (citing 15 U.S.C. § 77b(a)(1)). "Courts have interpreted "investment contract" broadly to encompass many money-raising schemes." *Id.* "In *S.E.C. v. W.J. Howey Co.,* 328 U.S. 293 (1946), the Supreme Court established the classic test for determining whether a transaction is an "investment contract" within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1)." *S.E.C. v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999). "In *Howey,* the Court explained that for the purposes of the Securities Act, an investment contract is "a contract, transaction, or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party...." *Id.* "This Court has divided the *Howey* test into the three elements: "(1) an investment of money, (2) a common enterprise, and (3) the expectation of profits to be derived solely from the efforts of others." *Villeneuve v. Advanced Business Concepts Corp.,* 698 F.2d 1121, 1124 (11th Cir. 1983), *aff'd en banc,* 730 F.2d 1403 (11th Cir. 1984)." *Id.* The FX Defendants dispute whether the "common enterprise" requirement is fulfilled here.

---

[5] In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit held that all Fifth Circuit decisions issued before September 30, 1981 would become binding precedent in the Eleventh Circuit.

In the amended complaint, the Plaintiffs articulate how the facts as alleged fit the *Howey* test. The Plaintiffs assert that they (1) invested money in (2) the common enterprise of "CFT and FxWinning's trading platform" (3) with the expectation of profit via "extremely high returns" produced by the platform. (Am. Compl. ¶ 116.) The Plaintiffs clearly expected profits derived solely from the efforts of the Defendants and/or the platform that they purportedly invented. At this stage, these allegations are sufficient to plead that the Plaintiffs' investments with the Defendants constituted securities. The FX Defendants do not cite any authority in which a court has found similar allegations insufficient at the motion to dismiss stage. The Court therefore declines to dismiss counts 1 and 2 on that basis.

The FX Defendants' argument that the Plaintiffs have not alleged the use of the mails or facilities of interstate commerce in connection with the sale or offer of securities also fails. (FX Mot. at 7.) Because it is well-established that the Internet is an "instrumentality of interstate commerce," the Plaintiffs have established that interstate means were used to offer and sell the investments in FX and CFT's platform. *See, e.g.*, *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004).

*(b) Whether count 1 is time barred*

"Section 12(a)(1) creates a private right of action for purchasers of a security against any person who offers or sells the security in violation of section 5 of the Act. 15 U.S.C. § 77l(a)(1). Section 5 in turn prohibits any person from offering, selling, or delivering securities without a registration statement in effect, § 77e(a), or without filing a registration statement . . . . Section 13 of the Act, § 77m, governs the timeliness of claims brought under section 12(a)(1)." *Fedance v. Harris*, 1 F.4th 1278, 1284 (11th Cir. 2021) (cleaned up).

"No action shall be maintained to enforce any liability [for sale of unregistered securities] . . . unless brought within one year after the violation upon which it is based." 15 U.S.C. § 77m. However, a defendant's fraudulent concealment of a violation can serve as a basis for equitable tolling of the one-year limitations period and "occurs when a defendant makes affirmative acts or misrepresentations which are calculated to, and in fact do, prevent the discovery of the cause of action." *Fedance v. Harris*, 1 F.4th 1278, 1285 (11th Cir. 2021) (cleaned up). "Plaintiffs must allege sufficient facts to state a claim for equitable tolling that is plausible on its face." *Id.* (cleaned up). "And, as with all grounds for equitable tolling, the plaintiff must show that he has pursued his rights diligently." *Id.* at 1287 (citing *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014)).

The CFT Defendants claim that count 1 should be dismissed because Section 5 of the 1933 Act carries a one-year statute of limitations, which lapsed before the Plaintiffs filed this lawsuit. (CFT Mot. at 6-7.) They argue that the limitations period began to run on the date that each Plaintiff opened his or her account, which in all cases took place over one year before count 1 was alleged on December 1, 2023. (*Id.* at 7.) The Plaintiffs disagree, arguing that the limitations period was tolled by the Defendants' false representations. (Pls.' Resp. to CFT Mot. at 6.) Based on these representations, the Defendants appeared to the Plaintiffs to be "regulated brokers, legitimate, and thus would have complied with all requisite laws[,]" including registration requirements. (*Id.*)

The Plaintiffs argue that the Court should toll the limitations period because the Defendants represented at the time of purchase that FxWinning was a "registered broker," that their operation was legitimate in general, and that the Defendants reassured the Plaintiffs that their money was secure when concerns arose in 2023. (Pls.' Resp. to CFT Mot. at 6.) However, none of these representations could plausibly be understood as convincing the Plaintiffs that they had not purchased a security or that the securities were in fact registered. *See Fedance*, 1 F.4th at 1289 ("But those misrepresentations have no bearing on whether [the Plaintiff] and the putative class were prevented from realizing that they had invested . . . in August and September 2017.")

Similar to the situation in *Fedance*, the Plaintiffs here were aware they were purchasing an investment and therefore could have investigated whether the securities were registered at the time of purchase. The Plaintiffs do not allege that they did so or that the Defendants specifically misrepresented the nature of the investments or the registration status of the investments. As discussed above, the Plaintiffs were aware of the facts alleged in the amended complaint that lead to the legal conclusion that they bought securities at the time their accounts were opened. The Plaintiffs here have failed to bring their claims within the limitations period and have not established a sufficient basis for equitable tolling.

The Court therefore must dismiss count 1 as barred by the statutory limitations period.

### (3) Securities Act of 1934 – Count 2 against Defendants CFT, Bastos, FxWinning, Cardenas, and Brito Cutie

"Section 10(b) prohibits the "use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange Commission] may prescribe as necessary or appropriate in the

public interest or for the protection of investors." 15 U.S.C. § 78j(b) (alterations added)." *Zalazar v. Cap. Force LLC*, No. 23-21512-CIV, 2023 WL 4186397, at *5 (S.D. Fla. June 26, 2023) (Altonaga, J.). "And Rule 10b–5, promulgated by the Securities and Exchange Commission to implement section 10(b), makes the following acts or omissions unlawful when done with a specified connection to interstate commerce:

> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b–5. *Fried v. Stiefel Lab'ys, Inc.*, 814 F.3d 1288, 1293 (11th Cir. 2016).

To state a claim of securities fraud under Section 10(b) and Rule 10b-5, the Plaintiff must allege: (1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called "loss causation." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1236-1237 (11th Cir. 2008); *see* 15 U.S.C. § 78j(b); Rule 10b-5, 17 C.F.R. § 240.10b-5.

The Defendants challenge 1) whether the Defendants sold a "security" within the meaning of the securities laws, 2) whether the Defendants acted with the requisite scienter; and 3) whether there was a causal connection between the Defendants' misrepresentations and the Plaintiffs' purchases. As already discussed, the Plaintiffs have sufficiently alleged that the Defendants sold a "security" within the meaning of the 1934 Act.

### *(a) Whether the Plaintiffs have met the heightened pleading standard for scienter in securities fraud claims*

The FX Defendants argue that the Plaintiffs' allegations regarding the state of mind of each Defendant "fall below the heightened pleading standard set forth in Rule 9(b)" and "the even more stringent pleading standard" imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). (FX Mot. at 9.)

"To survive a motion to dismiss, a securities-fraud claim brought under Rule 10b-5 must satisfy not only the run-of-the-mill federal notice-pleading

requirements, but also the heightened pleading standards found in Federal Rule of Civil Procedure 9(b) and the special fraud pleading requirements imposed by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4." *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1317-1318 (11th Cir. 2019). "Rule 9(b) requires a plaintiff to state with particularity the circumstances constituting fraud or mistake—which in the securities-fraud context, we've explained, requires a plaintiff to allege specifically (1) which statements or omissions were made in which documents or oral representations; (2) when, where, and by whom the statements were made . . .; (3) the content of the statements or omissions and how they were misleading; and (4) what the defendant received as a result of the fraud." *Id.* at 1318. "The PSLRA—with some overlap—requires a complaint to 'specify each statement alleged to have been misleading' and 'the reason or reasons why the statement is misleading.'" *Id.* (quoting 15 U.S.C. § 78u-4(b)(1)(B)). "It also requires, with respect to each act or omission alleged, that a complaint state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* (quoting 15 U.S.C. § 78u-4(b)(2)(A)) (cleaned up). "The required state of mind, we have held, is an "intent to defraud or severe recklessness on the part of the defendant." *Id.* (cleaned up). "And a 'strong inference' is one that is 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged.' Although scienter may be inferred from an aggregate of factual allegations, it must be alleged with respect to each alleged violation of the statute." *Id.* (cleaned up).

The FX Defendants argue with respect to count 2 that the Plaintiffs' allegations are insufficient to produce the strong inference that the FX Defendants acted with the required intent to defraud the Plaintiffs in connection with the sale of a security. (FX Mot. at 8-9.) They argue that the allegation that "Defendants knew that they in fact did not intend to honor the terms of Plaintiffs' investments and that the statements made to solicit Plaintiffs' funds regarding the platform(s) and software were materially false and misleading," improperly "lumps the Defendants together[,] and consists of unidentified misrepresentations amongst the Defendants . . . ." (FX Mot. at 9.)

However, the amended complaint does allege that FxWinning's website represented that it was a "'brokerage firm" offering a 'powerful trading platform' 'exclusive to retail and institutional clients around the world' that 'guarantees you the best spreads and trading conditions.'" (Am. Compl. ¶ 45 (cleaned up).) These statements were misleading because, according to the amended complaint, FxWinning never had such a platform or intended to use the platform to trade the Plaintiffs' funds at all. The Plaintiffs have therefore raised

the strong inference that FxWinning had the requisite intent to defraud the Plaintiffs, meeting the PSLRA's pleading standard.

However, the Plaintiffs do not identify misrepresentations made by Brito Cutie and Cardenas that would give rise to an inference about their state of mind at the time of the sale of the securities, and scienter cannot be inferred solely on a defendant's position within a company. *See Thorpe v. Walter Inv. Mgmt., Corp.*, No. 1:14-CV-20880-UU, 2014 WL 11961964, at *17 (S.D. Fla. Dec. 23, 2014) (Ungaro, J.) (finding that the defendant's position as chief executive officer, alone, was insufficient to establish a finding of scienter); *Durgin v. Mon*, 415 F. App'x 161, 165 (11th Cir. 2011) (recognizing that the defendants' positions in the company was not evidence that the defendants knew of the alleged fraud and therefore, could not support a finding of scienter). The FX Defendants' motion to dismiss count 2 is therefore denied with respect to FxWinning but granted with respect to Brito Cutie and Cardenas.

With respect to CFT and Bastos, the Plaintiffs cite the amended complaint's allegations that "CFT's website, CFT's long-running Telegram channel through which Bastos routinely touted the high returns CFT and FxWinning were earning, FxWinning's broker status, the security of Plaintiffs' funds, and pushed investors to 'get in now' before Defendants ceased allowing new investors, and Bastos' monthly Zoom sessions exclaiming the benefits to investing with Defendants and representing that he had 'zero' issues with FxWinning and trusted it over any other broker" establish the strong inference that CFT and Bastos intended to defraud the Plaintiffs. (Pls.' Resp. to CFT Mot. at 9 (cleaned up) (citing Am. Compl. ¶¶ 6, 40, 42, 51-60, 83, 86).) The Court agrees based upon the numerous specific statements attributable to both CFT and Bastos convincing the Plaintiffs to invest based on material misrepresentations. The Plaintiffs have therefore stated a claim against FxWinning, CFT, and Bastos for violating the Securities Act of 1934, but not against Brito Cutie or Cardenas.

### (b) Failure to plead causation

The CFT Defendants next attack counts 2 and 3 for their failure to allege that the CFT's misrepresentations caused the Plaintiffs' losses. Instead, according to the CFT Defendants, the *FX* Defendants' misrepresentations were the cause of the losses. (CFT Mot. at 8.) The CFT Defendants argue that the Plaintiffs' investments have not declined in value, but that even if they have, "FxWinning has, to date, failed to release any of Plaintiffs' funds or process their withdrawals[,]" thereby causing the loss. (CFT Mot. at 8.)

In order to state a claim for securities fraud, a causal connection must exist between the material misrepresentation or omission in question and the Plaintiff's loss (referred to as "loss causation"). *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1236-37 (11th Cir. 2008). With respect to the CEA, "[t]here is no bright line rule requiring plaintiffs to plead loss causation [], as required for claims under the Exchange Act." *Nguyen v. FXCM Inc.*, 364 F. Supp. 3d 227, 240 n.11 (S.D.N.Y. 2019).

"The loss causation element of a Rule 10b–5 claim requires that the defendant's fraud be both the but-for and proximate cause of the plaintiff's later losses. "The plaintiff must show that the defendant's fraud—as opposed to some other factor—proximately caused his claimed losses." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1309 (11th Cir. 2011) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005); *Bruschi v. Brown*, 876 F.2d 1526, 1530 (11th Cir. 1989)). "However, the plaintiff need not show that the defendant's misconduct was the sole and exclusive cause of his injury; he need only show that the defendant's act was a "substantial" or "significant contributing cause." *Id.* (citing *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1447 (11th Cir. 1997) (quoting *Bruschi*, 876 F.2d at 1531)).

The Plaintiffs have sufficiently pleaded that CFT's representations were the but-for and proximate cause of the Plaintiffs' losses. By making repeated misrepresentations, the CFT Defendants convinced the Plaintiffs to invest. (Pls.' Resp. to CFT Mot. at 8.) The CFT Defendants' statements far outnumbered the FX Defendants' statements in 2021 and 2022, creating a sufficient causal connection between CFT and the Plaintiffs' losses, even though FxWinning was the holder of the Plaintiffs' funds. Without a doubt, as alleged, the CFT Defendants' encouragement was a significant contributor to the Plaintiffs' decisions to invest.

The CFT Defendants also argue that Plaintiffs Longmire and Philips fail to allege that the CFT Defendants' statements caused them to invest with FxWinning/CFT because Longmire and Philips opened their accounts before March 2022 (Longmire on or about February 7, 2021 and Philips on or about December 3, 2021). (CFT Mot. at 14.) This argument is well taken for purposes of Plaintiff Longmire, who opened his account in February 2021. The amended complaint has not alleged that CFT's statements caused him to invest because CFT first posted misrepresentations about the profitability of its trading system in July, November, and December 2021. (*See* Pls.' Resp. to CFT Mot. at 13; Am. Compl. ¶¶ 52, 54-55.) Plaintiff Longmire is therefore dismissed as to count 2 for failure to plead causation. However, Philips has sufficiently pleaded that the CFT Defendants' misrepresentations caused him to invest because he allegedly

opened his account in December 2021, well after CFT began making statements pushing customers to invest in its venture with FxWinning.

Therefore, in summary, the Court dismisses count 2 against Brito Cutie and Cardenas, and with respect to Plaintiff Longmire. Count 2 remains against Defendants FxWinning, CFT, and Bastos.

### *(4) Commodity Exchange Act – Count 3 against CFT, Bastos, FxWinning, Cardenas, and Brito Cutie*

The Commodity Exchange Act authorizes civil suits against, among others, those who defraud, cheat, or deceive another person in connection with the sale of commodities or a commodity pool, or those who fail to register where required under the Act. *See* 7 U.S.C. §§ 6b, 6e, 6o.

The Plaintiffs allege that the Defendants violated the CEA "[t]o the extent Defendants actually purchased and sold foreign currencies on Plaintiffs' behalf and did not sell a security" by defrauding the Plaintiffs and failing to register in connection with their operation of a commodity pool in the form of the Plaintiffs' pooled investments for foreign exchange ("forex") trading. (Am. Compl. ¶¶ 132, 134-36.)

The FX Defendants argue that the Court should dismiss Count 3 because foreign currency is not a commodity as defined in the Commodity Exchange Act, and even it can be considered a commodity, that the Plaintiffs have failed to allege either a violation the CEA or one of the threshold requirements for a private right of action under Section 22 of the CEA. (FX Mot. at 10-11.) The CFT Defendants make a similar argument about the threshold requirement for bringing a private lawsuit under the CEA in their own motion to dismiss. (CFT Mot. at 10.)

The Plaintiffs have plausibly alleged a violation of the CEA based on the Defendants' fraudulent activity in connection with the operation of a commodity pool—the pool of the Plaintiffs' invested funds that was purportedly used for forex trading. Courts have found that operators of similar commodity pools violated the CEA. *See, e.g., Commodity Futures Trading Comm'n v. Oasis Int'l Grp., Ltd.*, No. 8:19-CV-886-VMC-SPF, 2023 WL 9954180 (M.D. Fla. Dec. 15, 2023); *Commodity Futures Trading Comm'n v. Highrise Advantage, LLC*, No. 6:20-CV-1657-CEM-RMN, 2023 WL 8622079 (M.D. Fla. Sept. 11, 2023), *R. & R. adopted*, 2023 WL 8622074 (M.D. Fla. Nov. 27, 2023). For example, a court recently found based on analogous facts that defendants had violated the CEA by "(1) falsely representing that all of the funds deposited [] were being traded [], which was not true; (2) issuing Monthly Statements to individual pool participants . . . that contained false information about the profits and balances of the individual pool participant's respective interests . . .; and (3)

failing to disclose that pooled funds had been misappropriated [] for [] personal use." *CFTC v. Highrise Advantage*, LLC, No. 6:20-CV-1657-CEM-RMN, 2023 WL 8622079, at *4 (M.D. Fla. Sept. 11, 2023). Thus, the Plaintiffs have alleged that the Defendants' actions fall within the scope of the CEA.

But "a plaintiff must satisfy the threshold requirements of Section 22 of the CEA before even reaching the merits of a [] fraud claim." *MBC Fin. Servs. Ltd. v. Boston Merchant Fin., Ltd.*, No. 15-CV-275, 2016 WL 5946709, at *11 (S.D.N.Y. Oct. 4, 2016)). The FX and CFT Defendants argue that even if a violation of the CEA was alleged, the Plaintiffs have not fulfilled the CEA's requirements for a private cause of action.[6]

"Section 22 [of the] CEA creates a private right of action for litigants limited to four circumstances: a plaintiff must either have (A) received trading advice from Defendant[] for a fee; (B) traded through Defendant[] or deposited money with Defendant[] in connection with a commodities or swap trade; (C) purchased from or sold to Defendant[] or placed an order for purchase or sale of a commodity or swap through them; or (D) engaged in certain market manipulation activities in connection with the purchase or sale of a commodity contract or swap." *MBC Fin. Servs. Ltd.*, 2016 WL 5946709 at *10.

The FX Defendants claim that the amended complaint "fails to allege that the FX Defendants provided Plaintiffs advice or otherwise received a fee[,]" pointing to the allegation that the *CFT* Defendants, not the FX Defendants, received a 40-50% account management fee. (FX Mot. at 11.) The FX Defendants also claim that the amended complaint states the other statutory bases for private rights of action but does not allege any facts to support their application. However, the Plaintiffs have alleged that FxWinning's website acknowledged that it receives commissions from customers' trading accounts. (Pls.' Resp. to FX Mot. at 8.) Combined with the allegation that the limited power-of-attorney agreement was on FxWinning letterhead, it is plausible to infer that the FX Defendants received some amount of the commissions from the Plaintiffs' accounts sufficient to satisfy the CEA's threshold requirement for a private cause of action.

The Defendants have therefore failed to demonstrate that count 3 should be dismissed against CFT, Bastos, FxWinning, Cardenas, and Brito Cutie.

---

[6] The CFT Defendants refer to this requirement as "standing" in their motion to dismiss. (CFT Mot at 10; Pls.' Resp to CFT at 12.)

**(5) *Florida Securities and Investor Protection Act – Count 4 against CFT, Bastos, FxWinning, Cardenas, and Brito Cutie***

The FX Defendants seek dismissal of the Florida Securities and Investor Protection Act ("FSIPA") claim on most of the same grounds as the federal securities claims. They argue that the Defendants did not sell a security as defined in the act, that the amended complaint fails to meet the heightened pleading standard for fraud, and that count 4 fails to specify whether the Plaintiffs seek rescission or damages. (FX Mot. at 12-13.)

"The elements of a cause of action under § 517.301 are identical to those under the Federal Rule 10b–5, except that the scienter requirement under Florida law is satisfied by showing of mere negligence." *Grippo v. Perazzo*, 357 F.3d 1218, 1222 (11th Cir. 2004). The Florida securities laws track federal law for purposes of defining a security, and as discussed above, the Plaintiffs have sufficiently pleaded the sale of a security. *See Githler v. Grande*, 289 So. 3d 533, 539 (Fla. Dist. Ct. App. 2019) ("Florida courts plainly have looked to federal securities law for guidance in interpreting Florida securities law"). But the amended complaint does not include allegations of a specific material false statement made by Brito Cutie or Cardenas in connection with the sale of the securities (*i.e.*, contemporaneously with the Plaintiffs opening their accounts). The Court will therefore dismiss count 4 with respect to the Defendants Brito Cutie and Cardenas. The Court also dismisses the claim with respect to Plaintiff Longmire because his account was opened before any of the alleged misrepresentations were made.

The Court declines to dismiss the FSIPA claim on the basis that the Plaintiffs have not specified whether they seek damages or rescission. The sole case the FX Defendants cite in support of this argument does not support the proposition that a plaintiff must specifically plead either rescission or damages at the motion to dismiss stage. *See Fallani v. Am. Water Corp.*, 574 F. Supp. 81, 84 (S.D. Fla. 1983) (Gonzalez, J.). The Court therefore will not dismiss count 4 for failure to state a claim against CFT, Bastos, and FxWinning, but dismisses count 4 as to Cardenas and Brito Cutie.

## C. Tort claims

Proceeding now to the Plaintiffs' claims in tort against the Defendants, the Court considers whether claims 6 through 11 can survive the Defendants' motions to dismiss.

As a preliminary matter, the Court notes that the FX Defendants have not moved to dismiss the claim against FxWinning for breach of contract for failure to comply with its terms and conditions by refusing to allow the

Plaintiffs to withdraw their funds (count 5). Count 5 will therefore remain intact.

Additionally, the CFT Defendants argue generally that the Plaintiffs fail to meet basic pleading requirements because they repeatedly refer to the Defendants collectively, rather than specifying which Defendant is responsible for which actions. (CFT Mot. at 11-13.) While some allegations in the amended complaint may not in isolation meet the requirements of Rules 8 and 9, the Court will separately evaluate each claim for the sufficiency of its underlying allegations.

### (1) Breach of fiduciary duty - Count 6 against all Defendants

The FX Defendants argue that count 6 should be dismissed as to the individual FX Defendants (Brito Cutie, Merino, and Cardenas) because the Plaintiffs fail to specifically allege facts showing that a fiduciary duty existed between them and the Plaintiffs. (FX Mot. at 14.) They claim that the amended complaint's only relevant allegation to the establishment of a fiduciary duty is that "CFT would 'manage [the customer's] trading accounts'" and that "CFT maintained complete control" over the accounts. (*Id.* at 14.) The CFT Defendants also argue that the Plaintiffs have failed to plead the existence of a fiduciary duty, but emphasize that FxWinning had custody of the Plaintiffs' funds, not CFT. (CFT Mot. at 14-15.)

"To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Jaffe v. Bank of Am., N.A.*, 667 F. Supp. 2d 1299, 1319 (S.D. Fla. 2009) (King, J.) (quoting *Watkins v. NCNB Nat'l Bank, N.A.*, 622 So. 2d 1063, 1065 (Fla. 3d Dist. Ct. App. 1993)). "Among other things, there must be 'circumstances exceeding an ordinary commercial transaction.'" *Id.* (quoting *Motorcity of Jacksonville, Ltd. v. Se. Bank N.A.*, 83 F.3d 1317, 1339 (11th Cir. 1996)).

"The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). "A fiduciary relationship may be either express or implied." *Maxwell v. First United Bank*, 782 So. 2d 931, 933 (Fla. 4th Dist. Ct. App. 2001). "Express fiduciary relationships are created by contract . . . or can be created by legal proceedings." *Id.* "An implied fiduciary relationship, on the other hand, can be inferred from "the circumstances surrounding the transaction and the relationship of the parties and may be found when confidence is reposed by one party and a trust accepted by the other." *Id.* at 933-34 (cleaned up). Regardless of whether the fiduciary relationship is express or implied, a

plaintiff must, of course, do more than set forth conclusory allegations or merely recite the definition of a fiduciary relationship. *See Hogan v. Provident Life & Acc. Ins. Co.*, 665 F. Supp. 2d 1273, 1287 (M.D. Fla. 2009) (finding allegations that the plaintiff "placed trust in [the defendant] and that [the defendant] accepted that trust" amounting to nothing more than "conclusory allegations" and a mere recitation of the definition of a fiduciary relationship).

The CFT Defendants argue that the fiduciary duty claim should be dismissed because the Plaintiffs rely on "a single, conclusory allegation that '[a]s holders and overseers of Plaintiffs' funds, Defendants owed a fiduciary duty to Plaintiffs . . .'" (CFT Mot. at 15.) This is an inaccurate reading of the amended complaint as a whole, which describes the Plaintiffs giving CFT dominion over their funds in exchange for a significant fee, executed in the context of CFT's representations regarding the trustworthiness of CFT and FxWinning. "The law is clear that a broker owes a fiduciary duty of care and loyalty to a securities investor." *Gochnauer v. A.G. Edwards & Sons, Inc.*, 810 F.2d 1042, 1049 (11th Cir. 1987) (applying Florida law); *Abramowitz v. Westport Nat'l Bank*, 2009 WL 10667468, at *8 (S.D. Fla. Nov. 5, 2009) (Ungaro, J.) (finding that plaintiffs stated breach of fiduciary duty claims under Florida law against investment advisors who managed money that was invested in Ponzi scheme).

The CFT Defendants made representations to gain the trust of the Plaintiffs, including that FxWinning was a registered broker and was "regulated under one of the most difficult to obtain Forex regulations in the world," among various misrepresentations about the profitability of investing with CFT and FxWinning. (Am. Compl. ¶¶ 45, 55, 57.) FxWinning itself represented that it insured customer funds by purchasing "Client Money Insurance" and that it was a "member of a network of responsible global financial service providers offering additional layers of security." (*Id.* ¶ 46.)

The FX Defendants also argue that the fiduciary duty claim against FxWinning should be dismissed because "a cause of action for breach of fiduciary duty will not lie where the claim of breach is dependent upon the existence of a contractual relationship between the parties." (FX Mot. at 14 (quoting *The Michael Titze Co., Inc. v. Simon Property Group, Inc.*, 500 Fed. App'x 455, 461 (11th Cir. 2010).) The FX Defendants assert that "the only basis for FX's alleged duty owed to Plaintiffs arose pursuant to the terms and conditions that Plaintiffs accepted." (*Id.*) But the contract was not the sole basis for the alleged relationship of trust between the Plaintiffs and FX Defendants, as described herein. At this stage, regardless of the failure of the contract to impose a duty, the Plaintiffs have plausibly alleged a relationship of trust between them and the FX Defendants. The Plaintiffs delivered their funds to

FxWinning in the context of the Defendants' repeated statements regarding their trustworthiness and qualifications to manage the Plaintiffs' funds. The Plaintiffs have therefore pleaded that CFT and FxWinning had a fiduciary duty to the Plaintiffs.

The CFT Defendants do not offer any separate reasons to dismiss count 6 with respect to the individual CFT Defendants, Bastos and Percy, other than their generalized argument regarding pleading standards. As the individual who made the statements regarding the trustworthiness of the operation and the founder and CEO of CFT, the Court will not dismiss count 6 against Bastos. However, due to the lack of relevant specific allegations against Percy, count 6 is dismissed with respect to him. And as with Defendant Percy, the amended complaint lacks specific allegations regarding a fiduciary duty between the remaining FX Defendants (Brito Cutie, Cardenas, and Merino) and the Plaintiffs. In sum, the Plaintiffs have pleaded a sufficient basis for a fiduciary relationship with CFT, Bastos, and FxWinning, but the Court dismisses the claim with respect to Defendants Percy, Brito Cutie, Cardenas, and Merino.

### (2) Fraud in the inducement (count 7) and negligent misrepresentation (count 8) against Defendants CFT, Bastos, FxWinning, Cardenas, and Brito Cutie

Only the FX Defendants (FxWinning, Brito Cutie, and Cardenas for this claim) seek dismissal of counts 7 and 8. They argue that dismissal is justified because the Plaintiffs fail to specifically attribute statements to FxWinning, Cardenas, or Brito Cutie, instead generally describing the allegations against the Defendants as a monolith. (FX Mot. at 14-15.)

"The requirements for a claim of fraud or fraudulent inducement are: (1) a false statement regarding a material fact; (2) the statement maker's knowledge that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance." *Thompkins v. Lil' Joe Recs., Inc.*, 476 F.3d 1294, 1315 (11th Cir. 2007).

To establish their claims for negligent misrepresentation under Florida law, the Plaintiffs must allege sufficient facts showing to following: (1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation. *Zhang v. Royal Caribbean Cruises, Ltd.*, No. 19-20773-CIV,

2019 WL 8895223, at *5 (S.D. Fla. Nov. 15, 2019) (Scola, J.) (citing *Serra-Cruz v. Carnival Corp.*, 400 F. Supp. 3d 1364, 1371 (S.D. Fla. 2019) (Ungaro, J.)). Unlike the claims under the securities laws and CEA, the misrepresentations need not have been made in connection with a transaction covered by the securities laws or CEA.

As described above, under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," although "conditions of a person's mind," such as malice, intent, and knowledge, may be alleged generally. Fed. R. Civ. P. 9(b). "The 'particularity' requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (cleaned up).

However, "it is the law of this Circuit that Rule 9(b)'s heightened pleading standard may be relaxed in instances such as these where the facts of the alleged fraud are peculiarly within the Defendants' knowledge." *Noboa v. Castillo*, 21-23952-CIV, 2022 WL 2191687, at *5 (S.D. Fla. June 17, 2022) (Scola, J.). Additionally, "Rule 9(b)'s requirements may be relaxed for allegations of prolonged, multi-act schemes." *Fla. Emergency Physicians Kang & Assocs., M.D., Inc. v. United Healthcare of Fla., Inc.*, 526 F. Supp. 3d 1282, 1295 (S.D. Fla. 2021) (Dimitrouleas, J.) (citing *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 662 (11th Cir. 2015)). Accordingly, while the Court must apply Rule 9(b) pleading standards, those standards are relaxed here where the information supporting those claims would be uniquely within the FX and CFT Defendants' control, and where the scheme alleged is especially complex. Viewed with these standards in mind, the Plaintiffs meet Rule 9(b)'s requirements in pleading their fraudulent inducement and negligent misrepresentation claims against CFT, FxWinning, Brito Cutie, Bastos, and Cardenas.

The Plaintiffs plead specific misrepresentations made by CFT and FxWinning through Internet channels and in person, which are listed both in the main body of the complaint and summarized in counts 7 and 8. (Am. Compl. ¶¶ 40, 42, 45-48, 51-52, 54, 57-62, 67, 69, 74, 76, 78-88, 91-97, 103, 161-176.) Additionally, with respect to CFT and FxWinning's officers, the Plaintiffs allege that Cardenas "attended multiple events, including a yacht party where Bastos was also present, where "he pushed Plaintiffs to increase their investments and represented the high profits that Defendants' platform and software earned." (*Id.* ¶ 198.f.) Bastos held monthly Zoom sessions exclaiming the benefits to investing with Defendants and representing that he

had "zero" issues with FxWinning and trusted it over any other broker. (*Id.* ¶ 198.c.) Furthermore, Brito Cutie told a Plaintiff on June 20, 2023 "that FxWinning would have to close the company, but nevertheless reassured [Plaintiff] Campbell that the 'client portal will remain, so everyone can see all,' withdrawals would happen soon, and 'Nothing [is] lost as people believe[,]'" implying that Brito Cutie sought to prevent the Plaintiffs from demanding withdrawal of their funds or otherwise taking action to recover their funds. (*Id.* ¶ 96.) The Plaintiffs have met Rule 9's standard with respect to counts 7 and 8.

### *(3) Conversion - Count 9 against all Defendants*

"Under Florida law, a conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Fogade v. ENB Revocable Tr.*, 263 F.3d 1274, 1291 (11th Cir. 2001) (cleaned up) (quoting Florida law). Accordingly, "in order to state a claim of conversion, one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." *Indus. Park Dev. Corp. v. Am. Exp. Bank, FSB*, 960 F. Supp. 2d 1363, 1366 (M.D. Fla. 2013) (citing *Edwards v. Landsman*, 51 So.3d 1208, 1213 (Fla. 4th Dist. Ct. App. 2011)). Further, "[i]n order for money to be an appropriate subject for a conversion claim, there must be an obligation for the receiver to keep intact or deliver the specific money at issue." *Indus. Park*, 960 F. Supp. 2d at 1366. Importantly, "a debt that can be discharged by the payment of money cannot be the subject of a conversion claim under Florida law." *Tikiz Franchising, LLC v. Piddington*, 17-CV-60552, 2017 WL 8780761, at *6 (S.D. Fla. Aug. 1, 2017) (Bloom, J.).

The FX Defendants argue that count 9 should be dismissed because of its reliance on conclusory allegations and the lack of specific allegations against the individual FX Defendants. (FX Mot. at 16.) The CFT Defendants argue that the Plaintiffs "fail to specifically identify which funds the CFT Defendants (and the other defendants) are each alleged to have converted." (CFT Mot. at 15.)

The Court agrees with the CFT Defendants that the Plaintiffs have not pleaded a claim for conversion under Florida law because their stolen funds are not "specific money capable of identification." *Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp. 3d 1262, 1285 (S.D. Fla. 2021) (Altonaga, J.). The Plaintiffs counter that the amended complaint alleges that Merino purchased real property in Miami in November 2022 using the ill-gotten gains from the scheme, but do not provide any legal authority to support the argument that the Plaintiffs' invested funds were sufficiently specific and identifiable to support a conversion claim under Florida law. (Pls.' Resp. to CFT Mot. at 16

(citing Am. Compl. ¶ 106).) There is no reason to believe that the funds Merino allegedly converted were derived from the funds of one Plaintiff or another, or from a combination of the Plaintiffs. The conversion claim is therefore dismissed.

### (4) Unjust enrichment – Count 10 against all Defendants

A claim for unjust enrichment under Florida law requires showing that: (1) plaintiff has conferred a benefit on defendant; (2) defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for defendant to retain it without paying the value thereof." *OJ Commerce, LLC v. Ashley Furniture Indus., Inc.*, 817 F. App'x 686, 692 (11th Cir. 2020).

The CFT Defendants argue that the unjust enrichment claim must be dismissed as to them because any benefit they received from the Plaintiffs was indirect, having passed through FxWinning first. (CFT Mot. at 16-17.) The FX Defendants argue that "Plaintiffs' allegations fail to specifically allege what the benefit conferred by Plaintiffs upon Cardenas, Brito, and Merino was" because "Plaintiffs' action solely accrues from the alleged failure to permit withdrawals from the Plaintiffs' accounts." (FX Mot. at 16.)

The Court first disagrees with the CFT Defendants that commissions from the Plaintiffs' funds here were too indirect to support an unjust enrichment claim. Although the alleged commissions received by the CFT Defendants were likely not transmitted directly from the Plaintiffs, the benefits were provided for in the investment deal between the Plaintiffs, CFT, and FxWinning, and were taken directly out of the Plaintiffs' invested funds. This scenario does not constitute an indirect benefit as described in *Virgilio v. Ryland Group, Inc.*, where the Eleventh Circuit affirmed dismissal of an unjust enrichment claim in part because the defendant received the commission in question "under an entirely separate services contract." 680 F.3d 1329, 1337 (11th Cir. 2012). The relationship between the CFT Defendants and the Plaintiffs is not so attenuated here.

However, with respect to the FX Defendants, the Defendants' argument that the Plaintiffs have not specifically alleged the benefit conferred on any individual Defendant other than Percy (who received approximately $141,000) is well taken. According to the amended complaint, Percy is the chief operating officer of CFT and received $141,625.48 in commissions from the Plaintiffs' investments. (Am. Compl. ¶¶ 31, 73.) But there are no specific allegations about the amount pocketed by any other individual Defendants that reach beyond the Plaintiffs having made payments to FxWinning, and CFT receiving some percentage of those funds. The Plaintiffs have therefore sufficiently

pleaded unjust enrichment against CFT, FxWinning, and Percy, but fail to allege the benefit conferred on the other Defendants.

### *(5) Civil conspiracy – Count 11 against all Defendants*

Under Florida law, civil conspiracy requires that a plaintiff establish "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Cordell Consultant, Inc. Money Purchase Plan and Trust v. Abbott*, 561 F. App'x 882, 886 (11th Cir. 2014) (quoting *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997)). "A claim for civil conspiracy can exist only if there is an actionable underlying tort or wrong." *Raimi*, 702 So. 2d at 1284. As multiple underlying unlawful acts have been alleged, as discussed above, the key inquiry here is whether the Plaintiffs have sufficiently pleaded an agreement, and if so, whether each Defendant undertook an overt act in furtherance of the conspiracy. The CFT Defendants argue that the civil conspiracy claim should be dismissed because the Plaintiffs have failed to provide evidence of an agreement between the Defendants. (CFT Mot. at 17.) The FX Defendants make the same argument and also claim that the Plaintiffs have not pleaded that the FX Defendants made any overt act in furtherance of the alleged conspiracy. (FX Mot. at 17.) When considering the amended complaint as a whole, the Plaintiffs have successfully pleaded a conspiracy between the Defendants.

As a reminder, "Rule 9(b)'s heightened pleading standard may be relaxed in instances such as these where the facts of the alleged fraud are peculiarly within the Defendants' knowledge." *Noboa v. Castillo*, 21-23952-CIV, 2022 WL 2191687, at *5 (S.D. Fla. June 17, 2022) (Scola, J.). Additionally, "Rule 9(b)'s requirements may be relaxed for allegations of prolonged, multi-act schemes." *Fla. Emergency Physicians Kang & Assocs., M.D., Inc. v. United Healthcare of Fla., Inc.*, 526 F. Supp. 3d 1282, 1295 (S.D. Fla. 2021) (Dimitrouleas, J.) (citing *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 662 (11th Cir. 2015)).

The Plaintiffs have met this standard for their civil conspiracy claim as to each Defendant. They plead factual reasons why, based on their close cooperation and statements made by both companies, CFT, FxWinning, and their officers should have known those misrepresentations to be false. (Am. Compl. ¶¶ 40, 42, 45-48, 51-52, 54, 57-62, 67, 69, 74, 76, 78-88, 91-97, 103, 161-176.) And they plead facts demonstrating that the Defendants' representations were intended to induce and did, in fact, induce the Plaintiff's justifiable reliance before and after the Defendants took custody of the Plaintiffs' funds. Again, where this information regarding intent to induce

reliance would be "peculiarly within" the Defendants' knowledge, the Plaintiffs may allege that intent more generally. *Noboa*, 2022 WL 2191687, at *5.

Certainly, the remainder of the Plaintiffs' pleadings demonstrate that the inference of knowledge and intent to induce is reasonable here. *Id.* ("Accepting these allegations as true and construing them in the light most favorable to [the plaintiff], the Court finds that his allegations give rise to reasonable inferences of knowledge and intent that make his claims plausible."). CFT and its officers presented the Plaintiffs with fabricated materials, including a KPMG audit report stating that all trades had been reviewed, a dashboard showing the performance of the purported forex trading, and continually touted the profitability of its software before and after the Plaintiffs invested. (Am. Compl. ¶¶ 80-82.) CFT and FxWinning falsely represented that a KYC/AML process was underway throughout the beginning of 2023, inducing the Plaintiffs to keep their funds with the Defendants and delaying suspicions about the fraud despite the Plaintiffs' inability to withdraw funds. (*Id.* ¶¶ 87-88, 91, 93.)

The Plaintiffs have also pleaded that each of the individual Defendants undertook overt acts in furtherance of the conspiracy, as discussed in detail above (counts 2-4 and 6-8 as to Bastos; counts 7 and 8 as to Brito Cutie and Cardenas; count 10 as to Percy). While the Plaintiffs have not pleaded allegations sufficient to support the other claims against Merino (breach of fiduciary duty, conversion, and unjust enrichment), there are sufficient allegations to reach the Rule 9(b) standard for the civil conspiracy claim. The following are the allegations that specifically name Merino: Merino is a co-founder of FxWinning (*Id.* ¶ 43); "Merino purchased real property at 725 NE 24th St in Miami, Florida in or about November 2022 for $4.7 million using his ill-gotten gains. Merino's assistant has confirmed that Merino knew FxWinning was fraudulent and used ill-gotten gains for his personal benefit" (*Id.* ¶ 106); and "Defendant David Merino created the 'software' and helped found FxWinning, helping to launch the conspiracy to defraud Plaintiffs. Upon information and belief, no 'software' was ever created, though Merino was one of the architects of the visual products and website that FxWinning demonstrated and made available to Plaintiffs in order to convince them to invest." (*Id.* ¶ 198.b.) As discussed above, the inference of intent to defraud is also lessened when the Defendants possess all of the evidence that would establish intent. Thus, in combination, these allegations are sufficient to plead civil conspiracy against each Defendant and the Court declines to dismiss count 11.

### *(6) Independent tort doctrine*

Finally, the FX Defendants argue that counts 6 (breach of fiduciary duty), 7 (fraud in the inducement), 8 (negligent misrepresentation), and 9 (conversion)[7] against FxWinning are barred by the independent tort doctrine because they are duplicative of the breach of contract claim (count 5). (FX Mot. at 17.)

"Florida's "independent tort doctrine bars recovery in tort for actions that challenge a breach of contract[.]" *Stepakoff v. IberiaBank Corp.*, No. 22-cv-20286, 637 F. Supp. 3d 1309, 1315 (S.D. Fla. Oct. 31, 2022) (Bloom, J.) (quoting *Perez v. Scottsdale Ins. Co.*, 19-cv-22346, 2020 WL 607145, at * 2 (S.D. Fla. Feb. 7, 2020) (Gayles, J.)). In other words, the doctrine prohibits a claimant from "repackag[ing] [ ] breach of contract claims as independent actions in tort." *Id.* (quoting *Dorvil v. Nationstar Mortg. LLC*, 17-cv-23193, 2019 WL 1992932, at *17 (S.D. Fla. Mar. 26, 2019) (Martinez, J.)); *see also Spears v. SHK Consulting & Dev., Inc.*, 338 F. Supp. 3d 1272, 1279 (M.D. Fla. 2018) ("District courts in Florida have thus held that it is well settled that a plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims." (cleaned up)). "Therefore, to set forth a claim in tort between parties in contractual privity, a party must allege action beyond and independent of breach of contract that amounts to an independent tort." *Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, No. 13-61687-CIV, 2014 WL 2215770, at *4 (S.D. Fla. May 29, 2014) (Rosenbaum, J.) (dismissing plaintiff's fraudulent inducement claim because it was "precisely the same as a potential breach-of-contract claim"). "But where a party has pleaded a tort claim in the alternative to a breach-of-contract claim, the independent tort doctrine does not apply." *Floral Logistics of Mia., Inc. v. N.Y. Garden Flower Wholesale, Inc.,* No. 23-20073-CIV, 2023 WL 4295320, at *5 (S.D. Fla. June 30, 2023) (Altonaga, J.) (citing *Nevado v. Off. Depot, LLC*, No. 23-cv-80244, 2023 WL 3778269, at *1 (S.D. Fla. Apr. 21, 2023) (Rosenberg, J.)).

Here, counts 6 through 9 are pleaded in the alternative to count 5 and rely on different facts from the breach of contract claim. The breach of contract claim relies on FxWinning's failure to comply with its terms and conditions, which need not involve any of the misleading statements allegedly made by FxWinning and its officers. Claims 6 through 9 are therefore sufficiently distinct from count 5. The Court declines to dismiss them at this early stage of litigation.

---

[7] The FX Defendants' motion states that "Counts V through IX" are barred by the independent tort doctrine. This appears to be a typographical error.

### 4. Conclusion

For the reasons stated above, the Court **grants in part and denies in part** the CFT Defendants' and the FX Defendants' motions to dismiss the amended complaint (**ECF Nos. 64, 66**). The Court's holdings are summarized as follows:

Count 1: Dismissed;

Count 2: Dismissed as to Defendants Brito Cutie and Cardenas; dismissed as to Plaintiff Longmire; remains as to Defendants FxWinning, CFT, and Bastos;

Count 3: Remains intact;

Count 3: Dismissed as to Defendants Brito Cutie and Cardenas; dismissed as to Plaintiff Longmire; remains as to Defendants FxWinning, CFT, and Bastos;

Count 5: Remains intact;

Count 6: Dismissed as to Defendants Percy, Brito Cutie, Cardenas, and Merino; remains as to Defendants CFT, FxWinning, and Bastos;

Count 7: Remains intact;

Count 8: Remains intact;

Count 9: Dismissed;

Count 10: Dismissed as to Defendants Bastos, Brito Cutie, Cardenas, and Merino; remains as to Defendants CFT, FxWinning, and Percy; and

Count 11: Remains intact.

The temporary stay on discovery (ECF No. 87) is lifted and discovery may proceed. The parties are directed to file a proposed revised schedule in this case by **June 14, 2024**, and the parties' joint motion to stay the Court's mediation deadlines pending a ruling on the motions to dismiss is **denied as moot**. (**ECF No. 94**.) This case will remain open.

**Done and ordered** at Miami, Florida on May 31, 2024.

_____
Robert N. Scola, Jr.
United States District Judge