**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 23-cv-23139-ALTMAN**

**KRISTOFFER JON HIND**, *et al.*,

*Plaintiffs*,

*v.*

**FXWINNING LIMITED**, *et al.*,

*Defendants*.

______________________________________/

## OMNIBUS ORDER

Several investors sued two companies and their officers over failed investments. Some of the Defendants now move for summary judgment. After careful review, we **GRANT in part** and **DENY in part** their motion.

### THE FACTS

FxWinning, Ltd. ("FxWinning") "was an online foreign exchange investment brokerage that facilitated foreign currency trading for its customers." CFT Defendants' Statement of Material Facts (the "CFT SMF") [ECF No. 206] at 1. CFT Solutions, LLC ("CFT")—"a technology company that managed an algorithmic high-frequency currency trading software"—"solicited individuals to use its trading algorithm on the FxWinning platform in exchange for . . . a portion of the gross profits received through trading, if any." *Id.* at 3–4. According to the Plaintiffs, FxWinning and CFT received "tens of millions of dollars" in investments—only to "discontinue[ ] all withdrawals" in "early 2023." Amended Complaint (the "AC") [ECF No. 42] ¶¶ 2–3; *see also id.* ¶ 5 (alleging that the companies have withheld "$27,000,000" in investments).

In August 2023, ten individuals[1] sued seven Defendants: (1) FxWinning; (2) Rafael Brito Cutie, FxWinning's "Chief Executive Officer," *id.* ¶ 28; (3) David Merino, "a founder and owner of FxWinning," *id.* ¶ 33; (4) CFT; (5) Renan de Rocha Gomes Bastos, "CFT's Chief Executive Officer," CFT SMF at 3; (6) Arthur Percy, CFT's "Chief Operating Officer," *ibid.*; and (7) Roman Cardenas, whom the Plaintiffs allege served as FxWinning's "vice president," AC ¶ 28. *See generally* Complaint [ECF No. 1]. The case was initially assigned to Judge Robert N. Scola, Jr., of our Court. *See* Clerk's Notice of Assignment [ECF No. 2]. In October 2023, CFT, Bastos, and Percy (collectively, the "CFT Defendants") moved to dismiss "[a]ll" the claims against them, arguing that each of the ten Plaintiffs "executed . . . agreements" requiring that they "arbitrate their claims." Motion to Dismiss [ECF No. 23] at 2. In December 2023, those ten Plaintiffs—now joined by another ten Plaintiffs[2]—filed the operative AC.[3]

That AC asserts eleven counts. Count I alleges a violation of the Securities Act of 1933 against CFT and FxWinning. *See* AC ¶¶ 112–20. Count II advances a violation of the Securities Exchange Act of 1934 (the "SEA") against CFT, FxWinning, Bastos, Cardenas, and Cutie. *See id.* ¶¶ 121–30. Count

[1] Those initial ten Plaintiffs include Kristoffer Jon Hind, Jason Thomas Waiton, Christopher Campbell, Paul Douglas Stoeppelwerth, Lucas Longmire, Thomas Blair Phillips, Taylor Jenkins, Jorden David Neil Malcolm, Robert Taylor Yates, and Rafael Reyes Salmeron.

[2] The ten Plaintiffs the AC added are Ryan Anthony Floyd, Matt Scott Vogel, Mark Alan Bentley, Peter Shane Donahue, Agata Agnieszka Powers, Avya Lindsey Waiton, Timothy Michael Morgan, Tarsis Carvalho Humphreys, Zachary Michael Sellers, and Brandon Michael Harrold.

[3] The AC noted that sixteen of the twenty Plaintiffs—everyone except for Campbell, Longmire, Phillips, and Yates—"have agreed to arbitrate their claims" against the CFT Defendants. AC at 1 n.1. But those sixteen Plaintiffs maintained their claims against the non-CFT Defendants, including Cardenas. *See ibid.* The pool of Plaintiffs shrank over the following months. In November 2024, Longmire dismissed his claims against the CFT Defendants. *See* Stipulation of Dismissal [ECF No. 144]. In May 2025, Yates dismissed his claims against all parties. *See* Notice of Voluntary Dismissal [ECF No. 149. And, in December 2025, we terminated Malcolm from the case. *See* December 3, 2025 Paperless Order [ECF No. 233] ("Malcolm . . . failed to attend our status conference and to comply with our order to show cause for his failure to prosecute his claims."). As of today, then, only *two* Plaintiffs—Campbell and Phillips—maintain claims against the CFT Defendants.

III asserts a violation of the Commodities Exchange Act (the "CEA") against CFT, FxWinning, Bastos, Cardenas, and Cutie. *See id.* ¶¶ 131–39. Count IV claims a violation of the Florida Securities and Investor Protection Act against CFT, FxWinning, Bastos, Cardenas, and Cutie. *See id.* ¶¶ 140–48. Count V brings a breach-of-contract claim against FxWinning. *See id.* ¶¶ 149–54. Count VI asserts a breach-of-fiduciary-duty claim against all the Defendants. *See id.* ¶¶ 155–60. Count VII alleges a fraud-in-the-inducement claim against CFT, FxWinning, Bastos, Cutie, and Cardenas. *See id.* ¶¶ 161–70. Count VIII brings a negligent-misrepresentation claim against CFT, FxWinning, Bastos, Cutie, and Cardenas. *See id.* ¶¶ 171–177. Count IX asserts a conversion claim against all Defendants. *See id.* ¶¶ 178–86. Count X alleges an unjust-enrichment claim against all Defendants. *See id.* ¶¶ 187–94. And Count XI alleges a civil-conspiracy claim against all Defendants. *See id.* ¶¶ 195–201.

In May 2024, Judge Scola issued an omnibus order resolving three pending motions (the "MTD Order") [ECF No. 97]; *see also* Motion to Dismiss [ECF No. 64]; Motion to Dismiss and Motion to Quash [ECF No. 66]; Motion to Stay [ECF No. 94]. In relevant part, that MTD Order dismissed Count I in its entirety; Counts II and IV as to Cutie and Cardenas; Count VI as to Percy, Cutie, Cardenas, and Merino; Count IX in its entirety; and Count X as to Bastos, Cutie, Cardenas, and Merino. *See* MTD Order at 36.

In October 2025, after Judge Scola's retirement, we received this case on reassignment. *See* Clerk's Notice of Reassignment [ECF No. 200]. In November 2025, Cardenas and the CFT Defendants each moved for summary judgment. *See* Cardenas Motion for Summary Judgment (the "Cardenas SJ") [ECF No. 205]; CFT Defendants Motion for Summary Judgment (the "CFT SJ") [ECF No. 207]. Those motions are now ripe for adjudication. *See* Response to Cardenas SJ (the "Response I") [ECF No. 216]; Cardenas Reply in Support of SJ (the "Cardenas Reply") [ECF No. 225]; Response to CFT SJ (the "Response II") [ECF No. 219]; CFT Reply in Support of SJ (the "CFT Reply") [ECF No. 237].

In December 2025, the Plaintiffs obtained a clerk's entry of default against FxWinning, Cutie, and Merino (collectively, the "FxWinning Defendants"). *See* Clerk's Entry of Default [ECF Nos. 223, 234]. That same month, the Plaintiffs filed a Motion for Default Judgment [ECF No. 240] against the FxWinning Defendants. In November 2026, we granted in part and denied in part the Motion for Default Judgment against the FxWinning Defendants. *See* Order Granting in Part and Denying in Part the Motion for Default Judgment [ECF No. 295] at 4. And we dismissed Count III as to Cutie and Count V. *See ibid.* Accordingly, only Cardenas and the CFT Defendants remain as Defendants in this action.

## THE LAW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And an issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ibid.* "All reasonable inferences must be drawn in favor of the nonmoving party, but a mere scintilla of evidence will not suffice to overcome a motion for summary judgment." *Ismael v. Roundtree*, 161 F.4th 752, 758–59 (11th Cir. 2025) (cleaned up); *see also Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990) ("When a motion for summary judgment has been made properly, the nonmoving party may not rely solely on the pleadings, but by affidavits, depositions, answers to interrogatories, and admissions must show that there are specific facts demonstrating that there is a genuine issue for trial."). "The moving party has the burden of demonstrating that there are no genuine issues of material fact," but "[o]nce a summary judgment movant's initial burden is met, the burden shifts to the nonmoving party to bring the court's attention to evidence demonstrating a genuine issue for trial." *Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325–26, 1335 (11th Cir. 2024) (cleaned up).

## Analysis

Cardenas and the CFT Defendants each move for summary judgment as to the remaining claims against them. After careful review, we grant in part and deny in part those motions. And we do so in four parts. *First*, we address the Plaintiffs' failure to abide by our Local Rules. *Second*, we find that the Plaintiffs fail to create a genuine dispute of material fact as to their SEA claim. *Third*, we reach that same finding as to the Plaintiffs' CEA claim. *Fourth*, we decline to exercise supplemental jurisdiction over the remaining state-law claims.

### I. The Statement of Material Facts

"Southern District of Florida Local Rule 56.1 governs motions for and oppositions to summary judgment" and "provides that parties must file a separate statement of material facts, supported by specific references to pleadings and evidence in the record." *Marantes v. Miami-Dade Cnty.*, 776 F. App'x 654, 661 (11th Cir. 2019). Specifically, the Local Rules state that "[a]n opponent's Statement of Material Facts shall clearly challenge any purportedly material fact asserted by the movant that the opponent contends is genuinely in dispute"; "shall be filed and served as separate documents and not as exhibits or attachments"; and must include "separately numbered paragraphs" supported by "specific, pinpoint references to particular parts of record material." *See* S.D. FLA. L. R. 56.1.

Our Plaintiffs disregarded those requirements. Far from supporting their factual assertions with pinpoint citations, our Plaintiffs never even filed a Statement of Material Facts, opting to bury their factual objections within their responses in opposition to the summary-judgment motions. *See generally* Docket. We therefore deem admitted both Cardenas's Statement of Material Facts (the "Cardenas SMF") [ECF No. 205-1] and the CFT Defendants' Statement of Material Facts (the "CFT SMF") [ECF No. 206]. *See* S.D. FLA. L. R. 56.1(c) ("All material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party's Statement of Material

Facts, provided that: (i) the Court finds that the material fact at issue is supported by properly cited record evidence; and (ii) any exception under Fed. R. Civ. P. 56 does not apply."); *Marantes*, 776 F. App'x at 662 ("Because Marantes failed to comply with Local Rule 56.1(a), and therefore did not properly contest the defendants' statement of material facts, it was within the district court's discretion under Local Rule 56.1(b) to deem the defendants' facts admitted."); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

When "the non-moving party has failed to comply with Local Rule 56.1—the only permissible way for it to establish a genuine issue of material fact at that stage—the court has before it the functional analog of an unopposed motion for summary judgment." *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008). But that "does not automatically entitle [the Plaintiffs] to summary judgment," *ibid.*, because "a party seeking summary judgment *always* bears the initial responsibility of informing the district court of the basis for its motion," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (emphasis added). So, we must now proceed to "review the record and determine if there is, indeed, no genuine issue of material fact." *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004). And, as we explain, we ultimately find no genuine issue of material fact here.

## II. The SEA Claim

Count II alleges that CFT violated the SEA, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, by "represent[ing] to [the] Plaintiffs that their investment funds were held in accounts that would be used by the Companies' platform(s) and software for forex trading and that investors could withdraw funds from the accounts at any time upon request." AC ¶ 124; *see also* MTD Order at 36 (dismissing Count II as to Cardenas). The CFT Defendants now seek summary judgment as to Count II, arguing that the "Plaintiffs never had an account with CFT" and lack any "evidence that they 'invested' in FxWinning," held "ownership interest in or voting rights within FxWinning," or

"became entitled to dividends or any other share of FxWinning's profits." CFT SJ at 7. As the CFT Defendants see it, "Count II should be dismissed on this basis alone." *Ibid.* We agree.

"In cases involving publicly traded securities and purchases or sales in public securities markets, the action's basic elements include: (1) a material misrepresentation (or omission); (2) scienter, *i.e.*, a wrongful state of mind; (3) *a connection with the purchase or sale of a security*; (4) reliance; (5) economic loss; and (6) 'loss causation,' *i.e.,* a causal connection between the material misrepresentation and the loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005) (cleaned up); *see also Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1236 (11th Cir. 2008) ("Rule 10b–5, in turn, forbids any person, directly or indirectly, to employ any device, scheme, or artifice to defraud; to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." (cleaned up)).

As relevant here, the CFT Defendants maintain that "Count II fails because [the] Plaintiffs cannot establish that the alleged fraud was made in connection with the purchase or sale of a security." CFT Reply at 4. To that end, they offer evidence that neither Percy, Bastos, nor CFT itself "ever held an ownership interest in FxWinning"; "received any dividends or other share of FxWinning's profits"; "received any payments derived from Christopher Campbell's [or Thomas Blair Phillips's] FxWinning account or any funds that [t]he[y] may have delivered to FxWinning"; "possessed or had access to the funds in Christopher Campbell's and Thomas Blair Phillips'[s] accounts at FxWinning"; "ha[d] any control over withdrawal of funds from Christopher Campbell's or Thomas Blair Phillips'[s] accounts at FXWinning"; "ha[d] access to or otherwise possess the funds held in those accounts"; "purchased from or sold to Christopher Campbell or Thomas Blair Phillips an option; a commodity under a margin account, margin contract, leverage account, or leverage contract; or an interest in a commodity

pool"; or "received any funds directly or indirectly from Christopher Campbell or Thomas Blair Phillips." Declaration of Arthur Percy [ECF No. 206-2] at 1–2; *see also* Declaration of Arthur Percy [ECF No. 206-2] at 5 (attesting to the same).

Faced with that evidence, our Plaintiffs merely observe that "[i]nvestment contracts encompass many money-raising schemes." Response II at 4. Even assuming that this statement is true, we cannot say that the Plaintiffs have created a genuine dispute of material fact as to whether any alleged fraud was indeed made "in connection with the purchase or sale of a security." Of the *sixty-three* exhibits the Plaintiffs appended to their Response II, only *one*—the Phillips Declaration [ECF No. 219-2]—appears to be a sworn statement, and that statement focuses exclusively on an unrelated topic: whether Phillips ever met Bastos. *See* Exhibits 1–63 [ECF Nos. 1–63]. Given that the Phillips Declaration never mentions whether CFT or its personnel held an ownership interest in FxWinning, received any of FxWinning's profits, or otherwise purchased or sold a security to any of the Plaintiffs, we find that the CFT Defendants' evidence remains unrebutted—and that Count II thus fails as to the CFT Defendants.

**III. The CEA Claims**

The AC also brings CEA claims—under 7 U.S.C. §§ 6b, 6e, 6o—against both Cardenas and the CFT Defendants. Section 6b prohibits certain fraudulent activities "in connection with . . . any contract of sale of any commodity . . . for future delivery." Section 6e prohibits "act[ing] as floor trader" or "as floor broker" under certain circumstances. And Section 6o prohibits "a commodity trading advisor, associated person of a commodity trading advisor, commodity pool operator, or associated person of a commodity pool operator" from engaging in certain activities. Both Cardenas and the CFT Defendants seek summary judgment as to the CEA claim. We consider their arguments in turn.

**a. The Claim Against Cardenas**

We'll start with Cardenas, who maintains that the Plaintiffs cannot "show that Cardenas personally violated §§ 6b, 6e, or 6o." Cardenas SJ at 11. As to § 6e, Cardenas notes that "[t]here is no evidence that Cardenas acted as a floor trader or personally executed purchases or sales for any of the Plaintiffs." *Ibid.* And, as to §§ 6b and 6o, Cardenas contends that "the evidence is clear that Cardenas made no representation and had no knowledge of the supposed scheme." *Id.* at 12. Indeed, Cardenas insists that he "never interacted with any of the Plaintiffs." *Ibid.*

The Plaintiffs offer no response to the floor-trader argument under § 6e. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." (cleaned up)). Focusing instead on §§ 6b and 6o, the Plaintiffs point to the Phillips Declaration [ECF No. 216-1], in which Phillips testified that he "met Roman Cardenas at the Fountainebleu Hotel" during a "yacht party . . . on January 21–22 2022," that he "shook [Cardenas's] hand," that Phillips's friend "Chuck Marshall" was "standing right next to me [and] asking him about the liquidity providers and the FXWinning brokerage specifically," and that Cardenas "was assuring us that everything was legit." Phillips Declaration at 1. Phillips further testified that Cardenas "appeared to be acting like Renan Bastos' handler" by "basically making sure that Renan didn't say too much when he was talking to everyone throughout the weekend." *Ibid.* But that testimony, as Cardenas notes, conflicts with Phillips's prior *sworn* representations. *See* Phillips Interrogatory [ECF No. 205-12] at 10 ("I don't specifically recall Cardenas speaking to me at the yacht party. I may have met him but it would have just been a simple intro and handshake."); Cardenas Reply at 3 ("[I]n the interrogatories, Cardenas asked repeatedly for Phillips to explain 'all' or 'every' fact and communication concerning his claims in this lawsuit. Phillips not once mentioned that Cardenas spoke to him or his friends. To the contrary, he repeatedly and consistently stated that he had no substantive communication with Cardenas.").

And a court may "disregard an affidavit that 'contradicts, without explanation, previously given *clear* testimony.'" *Kilgore v. Trussville Dev., LLC*, 646 F. App'x 765, 771 (11th Cir. 2016) (quoting *Lane v. Celotex Corp.*, 782 F.2d 1526, 1532 (11th Cir. 1986)); *see also Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."). The Plaintiffs never deign to explain the clear contradiction between the new Phillips Declaration and Phillips's prior unambiguous testimony.

In any event, the CEA claim against Cardenas fails for more fundamental reasons. By neglecting to advance evidence beyond the Phillips Declaration, our Plaintiffs haven't established *any* of the statutory prerequisites for liability under § 6b, § 6e, or § 6o. As to § 6b, the Plaintiffs haven't offered any evidence that a "contract of sale of any commodity . . . for future delivery" existed. As to § 6e, they haven't offered any evidence that Cardenas acted as a "floor trader." And, as to § 6o, they haven't offered any evidence that Cardenas acted as "a commodity trading advisor, associated person of a commodity trading advisor, commodity pool operator, or associated person of a commodity pool operator."

At the summary-judgment stage, a party who *doesn't* bear "the burden of proof at trial" "is not required to support its motion with affidavits or other similar material *negating* the opponent's claim" and can instead "point out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1437–38 (11th Cir. 1991) (cleaned up). Cardenas does just that, emphasizing that "Phillips introduced no evidence to support all elements of his claims" and that the Plaintiffs instead "rely on the [AC's] *allegations* to contradict Cardenas's evidence." Cardenas Reply 4–5 (emphasis added); *see also id.* at 8 ("And he noted that the only document related to the transaction at issue

provided by the Plaintiffs is a Power of Attorney between Campbell and 'CFTraders'—whatever that is."); *id.* at 9 ("The Unrepresented Plaintiffs did not respond at all, but the Represented Plaintiffs too fail to cite any evidence showing that the CEA covers these transactions."); *id.* at 10 ("[T]here is no evidence that Cardenas was FxWinning's vice president."). And Cardenas is right: While a complaint's allegations may carry the day on a motion to dismiss, they aren't enough to withstand summary judgment. *See Harrell v. City of Opa-Locka*, 2022 WL 898565, at *20 (S.D. Fla. Mar. 28, 2022) (Altman, J.) ("[A]t summary judgment, a plaintiff must produce evidence to support her contention."). The CEA claim thus fails as to Cardenas.

**b. The Claim Against the CFT Defendants**

The CEA claim against the CFT Defendants fares no better. The CFT Defendants contend that our Plaintiffs "lack evidence that they entered contracts to purchase foreign currency for future delivery." CFT SJ at 8. Again, we agree.

Instead of offering a *single* affidavit, declaration, or deposition establishing any of the statutory requirements for maintaining a claim under § 6b, § 6e, or § 6o, our Plaintiffs append dozens of unauthenticated exhibits—appearing to feature messages exchanged by various Defendants—and insist that Judge Scola "previously found that . . . the Defendant operated a commingled pool, which was a pool of funds that the Plaintiffs had invested in, purportedly used for foreign exchange (forex) trading." Response II at 4; *see also* Exhibits 1–63. But "[u]nsworn statements do not meet the requirements of Fed. Rule Civ. Proc. 56(e) and cannot be considered by a district court in ruling on a summary judgment motion." *Carr v. Tatangelo*, 338 F.3d 1259, 1273 (11th Cir. 2003), *as amended* (Sept. 29, 2003) (cleaned up). In any event, those exhibits—lacking any explanation and context—do not themselves establish the perquisites for § 6b, § 6e, or § 6o. What's more, as the CFT Defendants note, Judge Scola found only that the AC "plausibly *alleged* a violation of the CEA based on the Defendants' fraudulent activity in connection with the operation of a commodity pool." MTD Order at 24

(emphasis added). In claiming that Judge Scola already "found" that the Defendants "operated a commingled pool," Response II at 4, our Plaintiffs at best reveal an alarming misapprehension of the Federal Rules of Civil Procedure—and at worst deliberately attempt yet again to circumvent those Rules. *See, e.g.*, Paperless Order [ECF No. 286] (warning the Plaintiffs that the "continued failure to abide by the Federal Rules of Civil Procedure and our Local Rules *will* result in sanctions, including the dismissal of this case" (emphasis in original)).

In sum, the CFT Defendants correctly assert that the "Plaintiffs are unable to establish with any evidence that they transacted in commodities, requiring dismissal." CFT SJ at 8; *see also* Bastos Declaration [ECF No. 206-1] at 5 ("CFT has no record of either Christopher Campbell or Thomas Blair Phillips executing a [Limited Power of Attorney Agreement] with CFT. Neither Christopher Campbell nor Thomas Blair Phillips ever had an account with CFT. Neither I, CFT, nor any of its personnel have received any payments derived from Christopher Campbell's [or Thomas Blair Phillips's] FxWinning account or any funds that [they] may have delivered to FxWinning." (cleaned up)). Given the Plaintiffs' failure to muster *any* relevant evidence to the contrary, we cannot say that a genuine dispute of material fact exists as to whether the Plaintiffs satisfy § 6b, § 6e, or § 6o. We therefore grant summary judgment on Count III as to the CFT Defendants.

**IV. The State-Law Claims**

Our Plaintiffs brought this action in federal court by invoking federal-question jurisdiction and otherwise relying on our supplemental jurisdiction. *See* AC ¶¶ 34–36 ("This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 . . . . This Court has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367 because such claims are so closely related to the Securities claims and/or Commodity Exchange Act claims that they are part of the same case and controversy."). Having found that the SEA and CEA claims fail as to Cardenas and the CFT Defendants, we must now consider whether our exercise of supplemental

jurisdiction over the Plaintiffs' state-law claims against Cardenas and the CFT Defendants remains appropriate. And we find that it does not.

"A district court has original subject matter jurisdiction over claims arising under federal law, 28 U.S.C. § 1331, and it has supplemental jurisdiction over 'all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'" *Lewis v. ALDI Inc.*, 2026 WL 482206, at *5 (11th Cir. Feb. 20, 2026) (quoting 28 U.S.C. § 1367(a)). After dismissing the federal-claims portion of a complaint, a district court wields "the discretion either to continue to exercise supplemental jurisdiction over the state claims or to dismiss them." *Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 865 (11th Cir. 2022). That discretion is "broad," but "concerns of federalism—namely, of federal courts of limited jurisdiction weighing in on state law—counsel in favor of dismissing state-law claims after the federal claims are dismissed." *Id.* at 866; *see also Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

We decline to continue exercising our supplemental jurisdiction over the state-law claims here. Our Plaintiffs never argue that they'd be unable to pursue their remaining claims in state court. *See Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1568 (11th Cir. 1994) ("[D]ismissal may be an abuse of discretion where the state statute of limitations expired prior to dismissal of the anchor federal claim."). And we have no reason to believe that we're better-situated than a state court to adjudicate Florida Securities and Investor Protection Act, breach-of-fiduciary-duty, fraud-in-the-inducement, negligent-misrepresentation, unjust-enrichment, and civil-conspiracy claims. *See Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) ("State courts, not federal courts, should be the final arbiters of state law."); *Smola v. Sheriff, Hillsborough Cnty.*, 2025 WL 2977569, at *4 (11th Cir. Oct. 22, 2025) ("Federal courts defer to their state-court counterparts on questions of state law."). We thus dismiss without prejudice Counts IV, VI–VIII, and X–XI—as they relate to Cardenas

and the CFT Defendants—for want of jurisdiction. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) ("If no federal claim survives summary judgment, the court sees no reason why the other claims should not be dismissed or remanded pursuant to 28 U.S.C. § 1367(c)(3)."); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("The statement simply recognizes that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

## CONCLUSION

We therefore **ORDER and ADJUDGE** as follows:

1. Cardenas's Motion for Summary Judgment [ECF No. 205] and the CFT Defendants' Motion for Summary Judgment [ECF No. 207] are **GRANTED in part** and **DENIED in part**. Pursuant to Federal Rule of Civil Procedure 58, we will enter final judgment separately.
    a. We enter judgment against the Plaintiffs on Counts II and III as to Cardenas and the CFT Defendants.
    b. Counts IV, VI–VIII, and X–XI—as to Cardenas and the CFT Defendants—are **DISMISSED without prejudice** for want of jurisdiction.
2. All pending motions related to Cardenas and the CFT Defendants are **DENIED as moot**, all hearings are **CANCELED**, and any deadlines are **TERMINATED**.
3. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on November 19, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record